**WABASH RAILROAD COMPANY**
v.
**UNITED STATES.**
No. 304–56.

United States Court of Claims.
July 16, 1958.

James T. Lyon, Washington, D. C., for plaintiff. Claude W. Dudley, Joseph M. Jones, Bernard G. Ostmann and Robert T. Molloy, Washington, D. C., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for the defendant. James P. Garland, Washington, D. C., was on the brief.

LITTLETON, Judge.

■ The Wabash Railroad Company, plaintiff herein, sues to recover $2,225,-

643.31, together with interest thereon as provided by law. The sum in suit represents interest assessed and collected by the Commissioner of Internal Revenue with respect to an alleged excess profits tax deficiency of $8,560,166.51 for the calendar year 1942.

Plaintiff's predecessor, Wabash Railway Company, was a railway company which had been in receivership since December 1, 1931, and continued in receivership throughout the year 1941 under the jurisdiction of the United States District Court of Missouri. In order to distinguish this company from the plaintiff company, which bears nearly the same name, we shall refer to the original company as the bankrupt or predecessor company. Acting under orders of the District Court, and pursuant to section 77, of the Bankruptcy Act, 11 U.S.C.A. § 205, the receivers of the bankrupt company prepared and filed with the court a Plan of Reorganization in which it was stated, among other things, that it was contemplated that a new company (plaintiff herein) would acquire title to the properties and assets of the bankrupt company through foreclosure of existing mortgages, purchases at receivers' sales or otherwise, the exact procedure to be determined by the Reorganization Managers. The Plan also provided that any securities of the predecessor [predecessor company prior to 1915 reorganization] to the bankrupt company, or of the bankrupt company, not publicly held, would be cancelled in the reorganization.

Pursuant to the above Plan of Reorganization, and pursuant to an order of the District Court, the plaintiff, Wabash Railroad Company, was organized in 1937 under the laws of the State of Ohio, for the purpose of acquiring all of the railroad and other properties of the bankrupt company. From the time of its organization in 1937 until January 1, 1942, plaintiff had no assets other than $1,000 paid in for stock upon its organization, and it conducted no business whatsoever.

On October 2, 1941, the aforesaid District Court entered a Final Decree of Foreclosure and Sale. Pursuant to such Final Decree plaintiff assumed "All unpaid indebtedness and liabilities and all obligations of the Receivers, including Receivers' Certificates mentioned in this Decree, and obligations with regard to pension payments heretofore authorized by order of this Court, contracted or incurred to and including the date of sale in the maintenance, management or operation of the properties and premises of the Railway Company [the bankrupt company] and its Receivers, wherever the same may be located * * *." The liabilities assumed included all of the bankrupt's liabilities for taxes of any kind.

As of midnight December 31, 1941, the plaintiff acquired all of the railroad and other properties of the bankrupt company pursuant to the above Plan of Reorganization and as a result of the foreclosure sale held pursuant to the above-described order of the court of October 2, 1941. Since December 31, 1941, plaintiff has operated as a common carrier by rail, doing business substantially as a continuation of the bankrupt Railway Company. Also on December 30, 1941, the stock transfer books of the bankrupt company were permanently closed and after December 31, 1941, the bankrupt company had no assets and transacted no business.

The bankrupt company had unused excess profits credits for the years 1940 and 1941 in amounts sufficient to give rise to an unused excess profits credit adjustment of $11,624,509.17 for the year 1942.

On November 9, 1942, the Commissioner of Internal Revenue issued a ruling to the effect that the transaction whereby plaintiff acquired the properties of the bankrupt company did not constitute a "reorganization" within the meaning of section 112(g) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(g). The Commissioner ruled that since the transaction did not constitute

such a reorganization, the exchanges of the securities of the bankrupt company for new securities of the plaintiff gave rise to gains or losses which must be recognized for Federal income tax purposes.

Plaintiff duly filed its excess profits tax return for the calendar year 1942 with the Collector of Internal Revenue at St. Louis, Missouri. The plaintiff reported no excess profits tax liability, claiming the unused excess profits credit carry-over from the years 1940 and 1941 in the amount of $21,451,087.58 which had belonged to the bankrupt company. The Collector disallowed such unused excess profits credit carryover, and on October 25, 1946, plaintiff was advised by the Internal Revenue agent who was in charge in St. Louis of a proposed deficiency in excess profits tax for 1942 in the amount of $11,835,302.77.

On July 15, 1947, Congress enacted Public Law 189, 61 Stat. 324, which allowed reorganized railroad corporations under certain circumstances, the right to use the unused excess profits credit of a predecessor corporation. After the enactment of this law, the Commissioner ruled that plaintiff was entitled to an unused excess profits credit adjustment in the amount of $11,624,-509.17, thus reducing the proposed deficiency to $29,551.77, which latter sum was assessed in 1954. By this adjustment the Commissioner permitted plaintiff the benefit of the unused excess profits credit of plaintiff's predecessor bankrupt corporation for the years 1940 and 1941. The Commissioner of Internal Revenue then determined that plaintiff owed the Government interest

on the potential deficiency of $8,560,166.-51 in addition to the assessed deficiency of $29,551.77, and such interest in the total amount of $2,225,643.31 was assessed and collected from plaintiff in the latter part of 1954 and the early part of 1955.[1]

On July 27, 1955, plaintiff filed a claim for refund of the interest on the potential deficiency, on the ground that the deficiency in connection with which that interest was assessed and paid had never existed because plaintiff had been entitled to the allowance of the unused excess profits credit adjustment prior to the passage of P.L. 189 and at the time of filing its 1942 excess profits tax return. In the alternative, plaintiff contended that no provision of law authorized the assessment or collection of interest on such a potential deficiency. Plaintiff took the position that Public Law 189 must be construed, in the light of its legislative history, to forbid the assessment of interest on any deficiencies which, under the Commissioner's interpretation of the prior law, might have existed prior to the enactment of P.L. 189. Plaintiff's claim for refund was rejected on March 29, 1956.

The defendant contends that plaintiff was not entitled to use its bankrupt predecessor's unused excess profits carryovers until the date of the enactment of Public Law 189 in 1947 and that consequently from March 15, 1943 (the due date of plaintiff's excess profits tax return for the calendar year 1942), to July 15, 1947 (the day on which Public Law 189 became law), plaintiff was, under the law as it then existed, actually liable for the excess profits tax actually

1. Interest in the amount of $2,225,643.31 was collected from plaintiff in respect of the alleged deficiency of $8,560,166.51 referred to above. Collection was effected as follows:

| Date | Manner of Collection | Amount |
|---|---|---|
| Nov. 1954 | Credit of a part of an agreed overpayment of income tax and interest thereon for the year 1942. | $2,046,747.32 |
| Mar. 1955 | Credit of additional interest on 1942 income tax. | 86,650.89 |
| Apr. 11, 1955 | Cash payment by plaintiff .................... | 92,245.10 |
| | | 2,225,643.31 |

assessed in addition to the later assessed deficiency mentioned above. See United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302.

We first consider plaintiff's contention that under the facts and circumstances of this case it was at all times prior to 1947 entitled to use its bankrupt predecessor's carryovers of unused excess profits credits for 1940 and 1941 under the provisions of section 710(c) (3) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 710 (c) (3) (B) which provides that a "taxpayer" having an unused excess profits credit for one year beginning after December 31, 1939, may carry such credit over to two succeeding years. We are of the opinion that under the provisions of law in effect prior to 1947 and under applicable case law, plaintiff was the same "taxpayer" in 1942 as its bankrupt predecessor and was entitled to the carryover benefits provided in section 710 of the Code. Whether, as held by the Commissioner of Internal Revenue and asserted by defendant, there was a failure on the part of plaintiff to meet the technical requirements of a statutory reorganization within the meaning of section 112(g) of the Code, we think that Congress intended to treat railroad reorganizations under section 77 of the Bankruptcy Act as tax free reorganizations despite their failure to meet the technical requirements of section 112(g). This is evidenced by the fact that section 112(b) (9) of the Code provides that no loss shall be recognized in a section 77 railroad reorganization and that the term "reorganization" as that term is used in section 112(g) shall not apply to railroad reorganizations. Furthermore, section 113(a) (20) provides that the basis of property acquired under a section 77 railroad reorganization shall be the same as it would have been in the hands of the railroad corporation whose property was so acquired, and that the term "reorganization" as used in that section should not be limited by the definition of such term in section 112 (g) of the Code.

No court has passed upon the precise question here involved. Prior to the passage of Public Law 189 in 1947, the Commissioner of Internal Revenue took the position that a reorganized bankrupt railroad was entitled to the carryover and carryback provisions of section 710 (c) of the Code if such reorganized corporation was by state law permitted to and did continue under the charter of the old bankrupt corporation. Where under applicable state law the reorganized corporation was required to adopt a new charter, the Commissioner took the position that the reorganized corporation was not the same taxpayer as its predecessor bankrupt corporation and was not entitled to the benefits of section 710(c). We are of the opinion that the administrative interpretation of the applicability of section 710(c) to reorganized railroads required by state law to adopt a new charter, was in error.

The reasoning of the Federal courts and the Supreme Court in cases involving reorganized corporations other than railroad corporations was discussed by this court in its decision in Koppers Co. v. United States, 134 F.Supp. 290, 133 Ct.Cl. 22, and we shall refer to those decisions only briefly herein. The case most relied on by the Government is that of New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. In New Colonial Ice the creditors and stockholders of the old corporation organized a new corporation which purchased the assets and assumed the liabilities of the old corporation and continued the business of the old corporation. The old corporation, however, continued in existence for more than a year after the formation of the new one. The Supreme Court held that the new corporation might not have the benefit of the net operating losses of the old corporation, holding that the two corporations were separate and distinct entities and that the loss of the old corporation was not available to the new one in the absence of a clear Congressional intention to permit a carryover under such circumstances. In Helvering v. Metro-

politan Edison Co., 1939, 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957, the Supreme Court held that a corporation might deduct the unamortized discount and expense incurred in connection with the redemption of the bonds of its subsidiary where all the assets of the subsidiary had been previously acquired by the taxpayer pursuant to Pennsylvania law. The court held that while the transactions did not comply with all the technical requirements of a statutory merger, the transactions did have all the essential elements of a merger and fell within the principle that the corporate personality of the transferor was drowned in that of the transferee and that accordingly the continuing corporation was entitled to the deductions claimed.

The decision of the Supreme Court in Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775, concerns the interpretation of the term "reorganization" within the meaning of section 112(i) (1) of the 1928 Revenue Act, 45 Stat. 791, 818, 26 U.S.C.A. Int.Rev.Acts, page 379, which provision was essentially similar to section 112(g) of the 1939 Code. In that case the issue was whether or not, in computing depreciation and depletion allowances for one year, the assets of a new corporation had the same basis they had when owned by the old corporation. The taxpayer had computed its depreciation and depletion allowances for the year in question by treating its assets as having the same basis which they had in the hands of the old corporation. The Commissioner of Internal Revenue held, however, that the basis in the hands of a new corporation must be the price paid at the bankruptcy sale. The Commissioner accordingly determined a deficiency. The Supreme Court noted that if there was a "reorganization" within the meaning of section 112 of the 1928 Revenue Act, then the taxpayer was entitled to use the asset basis of the old corporation in computing its depreciation and depletion allowances. The old corporation was a subsidiary of a corporation in receiver-ship in 1929. A creditors committee proposed a plan of reorganization providing for the formation of a new corporation to acquire all the assets of the old subsidiary of the bankrupt corporation with stock of the new corporation to be issued to satisfy the creditors' claims. Pursuant to this plan, involuntary bankruptcy proceedings were instituted in 1930. The trustee in bankruptcy offered the assets for sale at public auction. All of the assets were purchased for cash by the creditors' committee and the balance was acquired by agreement of the creditors to accept stock of the new corporation in complete discharge of their claims against the bankrupt. The new corporation, i. e. the taxpayer, was formed and acquired all of the assets of the bankrupt corporation; it issued its stock to the creditors of the old corporation and paid the few dissenting creditors in cash. Business operations were not interrupted by the reorganization and were carried on continuously. The Supreme Court noted that the transactions in question might not qualify technically as "reorganizations." The Supreme Court held, however, that in its opinion the actual transfer shifting ownership of the equity in the property from the stockholders to the creditors of the old corporation took place for all practical purposes not at the time of the judicial sale, but prior thereto at the time when the creditors first took steps to enforce their demands against the bankrupt debtor by the institution of bankruptcy proceedings. The subsequent judicial sale did nothing but recognize officially what was already true in fact. The Court held that the taxpayer was entitled to use the basis of the old corporation in computing its depreciation and depletion allowances.

In Libson Shops, Inc., v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 the issue was whether under sections 23(s) and 122 of the 1939 Code, 26 U.S.C.A. §§ 23(s), 122, a corporation resulting from the merger of 17 separate businesses which had filed separate income

tax returns, might carry over and deduct the pre-merger net operating losses of three of the constituent corporations from the post-merger income attributable to the other 14 businesses. The court held that it could not. The basis for the court's holding was that the carryover privilege was not available to a new corporation unless there was a continuity of business enterprise, i. e., a situation where the income against which the prior year's losses were to be offset was derived from the operation of substantially the same business which produced the loss. The Supreme Court noted that the requirement of continuity of business enterprise was indicated by the legislative history of the carryover and carryback provisions which had been enacted to ameliorate the drastic consequences of taxing income on a strictly annual basis. The court held there was no intention on the part of Congress to average pre-merger losses of one business with post-merger income of some other business which had been operated and taxed separately prior to the merger. In the case there under consideration the taxpayer was attempting to carry over the pre-merger losses of three business units which continued to have losses after the merger. The court noted that had there been no merger, these three companies would have had no opportunity to carry over their losses and the court accordingly refused to permit the taxpayer the benefit of the claimed carryover.

Both plaintiff and defendant herein place considerable reliance on the Libson case supra. We are of the opinion that the rationale employed by the Supreme Court in reaching its decision in that case is more favorable toward the position taken by the plaintiff herein. In its decision the Supreme Court noted that in Stanton Brewery, Inc., v. Commissioner, 2 Cir., 176 F.2d 573, the controlling fact in favor of the taxpayer was that the merging corporations carried on essentially a continuing enterprise and were therefore entitled to all the benefits of section 710(c) in ameli-

orating the otherwise harsh tax consequences of fluctuating profits of expanding businesses. The court also noted the case of Newmarket Manufacturing Co. v. United States, 1 Cir., 233 F.2d 493, in which it was held that there was in reality only one single business involved where a corporation desiring to change the state of its domicile caused the organization of a new corporation in another state and merged into it. In that case the new corporation sought and was permitted to carry back most of its post merger losses to the pre-merger income of the old corporation. In holding for the taxpayer the court noted that, but for the merger, the old corporation itself would have been entitled to the carryback. In a footnote to its decision in the Libson case (353 U.S. at page 388, 77 S.Ct. at page 993) the Supreme Court noted that in the decision of this court in Koppers Co. v. United States, 134 F.Supp. 290, 133 Ct.Cl. 22, the corporation which resulted from the merger carried on essentially the same taxable enterprise as before.

In the instant case it seems clear that the reorganized railroad corporation meets the continuity of business enterprise test referred to above. Furthermore, the carryover claimed by the reorganized plaintiff corporation would certainly have been available to the old bankrupt corporation had there been no new corporation formed. Under the terms of the reorganization the new corporation became liable for all the obligations of the old corporation, including the old corporation's tax liability. We conclude that, under the law as it existed prior to the passage of Public Law 189, a railroad reorganized under Section 77 of the bankruptcy law and required to secure a new charter, was intended by Congress to receive the same tax treatment under section 710(c) of the Code as a reorganized railroad corporation which continued to operate under the charter of the old corporation. It therefore follows that plaintiff was entitled to the 710(c) credit at the time of the transfer of the assets and liabilities of the bank-

rupt corporation to the plaintiff; that plaintiff did not as a matter of law become liable for the deficiency assessed by the Commissioner when he disallowed such carryover, and therefore plaintiff was not liable for interest on such a so-called potential deficiency.

Although we could rest our decision of this case at this point without considering the parties' contentions with respect to the meaning of the interest provision contained in section 4 of the Act of July 15, 1947, 61 Stat. 324, Public Law 189, we are of the opinion that plaintiff's contentions with respect to the interpretation of this law in general and of that section in particular have considerable merit. It is plaintiff's contention that Public Law 189 did not represent a change in the law of carryovers and carrybacks as that law relates to reorganized railroads under section 77 of the bankruptcy law, but that it merely represented a clarification of a law which had been consistently misinterpreted and misapplied by the Commissioner of Internal Revenue in the case of railroads reorganized under a new charter. Throughout the hearings held on May 26, 1947, by the House Committee on Ways and Means (H.R. 3369, 80th Cong., 1st Sess.), the witnesses referred to the legislation as clarifying legislation. Representatives of the railroads emphasized the fact that they were not seeking a change in any express provision of the law, but merely a clarifying amendment to remove what appeared to be an unjustifiable discrimination against a few railroads resulting from the interpretation placed by the Bureau of Internal Revenue upon the existing law. The only witness who took issue with this position was the Tax Legislative Counsel of the Treasury Department who, early in this testimony, stated that he did not understand the legislation to be clarifying legislation, but rather to represent a change in the tax law as it had existed for a great many years. Committee members pointed out that the only interpretation with which the new law was concerned was the interpretation involving reorganized railroads which were required by state law to reorganize under a new charter and the witness was asked whether or not such an interpretation was not highly technical and somewhat artificial. The witness insisted that the interpretation had considerable substance, but no substantial explanation was ever forthcoming to support this assertion. The witness continued to insist, however, that the proposed legislation amounted to a relief bill and a change in the law and was not a clarifying amendment. There was no comment in the hearings regarding section 4, which provides as follows:

"Sec. 4. If the allowance of a credit or refund of an overpayment of tax resulting from the application of this Act is prevented, on the date of the enactment of this Act or within one year from such date, by the operation of any law or rule of law other than this section and other than section 3761 of the Internal Revenue Code, such overpayment shall be refunded or credited in the manner provided in the Internal Revenue Code if claim therefor is filed within one year from the date of the enactment of this Act. No interest shall be allowed or paid on any overpayment or deficiency resulting from the application of this Act."

House Report No. 624 dated June 20, 1947, to accompany H.R. 3861 which became Public Law 189, did not state in so many words whether the legislation represented a change in the law or merely a clarifying amendment to an existing law. The report did point out that under the interpretation placed on the existing law by the tax officials a reorganized railroad corporation which was required to secure a new charter was treated differently for tax purposes from a reorganized railroad corporation which by state law was permitted to operate under the charter of the old company. The difference in tax treatment was characterized as discrimination against the newly chartered company and

it was stated that the proposed legislation was designed to remove such discrimination. The report also noted that the legislation would apply only where the property for tax purposes had the same basis in the hands of the new corporation as it had in the hands of an old corporation, and that the relief was limited to railroad corporations as defined in section 77, sub. m of the National Bankruptcy Act. The report noted that the relief provided was to be retroactively applied to extend the benefits thereunder to railroads which had already completed their reorganization, but that safeguards had been included in the bill to prevent a railroad reorganized under a new charter "from getting any greater tax relief than it would have been entitled to if it had been organized under its old charter." We are of the opinion that section 4 above was one of the safeguards referred to by the House Committee. If a new-charter reorganized railroad became entitled to a refund of taxes previously paid under the Commissioner's interpretation that such corporation was not the same taxpayer as the old, and such taxpayer received the usual interest on such refund provided for in the Internal Revenue Code, that new charter corporation would reap considerably greater tax benefits than the old charter railroad corporation which had received the benefit of the carryover and carryback provisions of the Internal Revenue Code. On the other hand, if the new-charter corporations were assessed interest on deficiencies which were outlawed by the new legislation, then the Congressional purpose of completely equalizing the tax treatment of reorganized railroad corporations regardless of whether such corporations continued under a new or the old charter, would be frustrated.

On the basis of the language of Public Law 189 and its legislative history, we are of the opinion that the legislation was clarifying and declaratory of existing law and that, in any event, section 4 of such law prohibited both the payment to taxpayers of interest on overpayments refunded as a result of the law and also prohibited the assessment and collection of interest on deficiencies which existed only by reason of the Commissioner's application of his pre-1947 carry-over interpretation of section 710(c) in the case of new-charter reorganized railroad corporations.

The plaintiff is entitled to recover, together with interest as provided by law and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge (concurring).

I think Public Law 189, 61 Stat. 324, was intended to give to the successor corporation the right to avail itself of the unused excess profits credit of the predecessor corporation as of the time when the successor corporation was required to file its income tax return. If this is true, no deficiency resulted and, therefore, no interest is due.

I am satisfied that it was the purpose of Public Law 189 to give to the successor corporation the full right to use the unused excess profits credit of the predecessor corporation without restriction. To require it to pay interest on what would have been a deficiency except for Public Law 189, places restrictions on the use of the unused excess profits credit of the predecessor corporation which was not intended by Public Law 189.

For this reason I concur.