## WISCONSIN CENTRAL RAILROAD COMPANY

v.

## UNITED STATES.

No. 64–59.

United States Court of Claims.

Dec. 6, 1961.

Joseph M. Jones, Washington, D. C., for the plaintiff. Fordyce W. Crouch, Minneapolis, Minn., Robert T. Molloy and Kenneth W. Moroney, Washington, D. C., were on the brief.

Benjamin H. Pester, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for the defendant. James P. Garland, Philip R. Miller and Mildred L. Seidman, Washington, D. C., were on the brief.

JONES, Chief Judge.

This is an action to recover $253,-659.98 in income tax and $32,731.15 in interest paid by plaintiff as successor to Wisconsin Central Railway Company (hereinafter sometimes referred to as "predecessor") in a bankruptcy reorganization under section 77 of the Bankruptcy Act.[1]

The facts are stipulated. Predecessor, a Wisconsin corporation which operated as a common carrier by rail, was in re-

---

[1]. 30 Stat. 544, as amended, 11 U.S.C.A. § 205 (1958 Ed.).

ceivership from December 3, 1932, to September 30, 1944, and, from September 30, 1944, to March 1, 1954, was in trusteeship under a section 77 reorganization proceeding. Reorganization managers, designated pursuant to a plan approved by the Interstate Commerce Commission and the district court, decided that the reorganized company should be a new corporation organized under the laws of Minnesota, rather than a continuation of the old corporate shell with appropriate charter amendments. Plaintiff was thereupon organized and, as of March 1, 1954, pursuant to the district court's final decree, acquired all properties, but not all liabilities, of predecessor. Since that date, plaintiff has operated as a common carrier by rail.

As is pertinent, the consummation order and final decree provided as follows: All properties of predecessor were vested in plaintiff, and taken free and clear of all rights of predecessor's creditors and stockholders, except as otherwise provided in the decree. Plaintiff was required to pay all Federal taxes owing by predecessor. The consummation order and decree "otherwise provided" that plaintiff assume a considerable part of predecessor's liabilities, in addition to those for taxes. For example, it assumed obligations of more than $5,000,000 for

conditional sales agreements and equipment trusts. Predecessor's bonded indebtedness, totaling approximately $56,-500,000, was not assumed, but was discharged by the issuance of new bonds in the amount of $35,000,000 and shares of plaintiff's common stock. However, unsecured creditors (in the amount of $9,-000,000) and all the old corporation's preferred and common stockholders (of par value totaling $27,000,000) were wiped out.

Predecessor had a net income for the calendar year 1953 for which plaintiff paid the income tax due. For plaintiff's taxable year of March 1, 1954, to December 31, 1954, there was a net operating loss in an amount sufficient to eliminate all net income of predecessor, if allowed as a net operating loss carryback to 1953.

The single issue before this court is whether, under the rules of law developed with respect to the applicability of section 122 of the Internal Revenue Code of 1939 [2] to tax consequences of a reorganization, plaintiff is entitled to a net operating loss carryback to the year 1953 under section 172 of the Internal Revenue Code of 1954.[3] This requires a determination of whether the plaintiff and its predecessor are "the taxpayer" to which section 122(b) (1) (A) [4] allowed the advantage of a carryback.[5]

---

2. 26 U.S.C. (I.R.C.1939) § 122 (1952 Ed.).

3. 26 U.S.C. (I.R.C.1954) § 172 (Supp. II, 1952 Ed.). Section 381 of the 1954 Code reflects new rules for ascertaining when a successor corporation in certain corporate acquisitions is entitled to carry over or back a net operating loss from or to its predecessor. These rules did not become effective until after the reorganization in the case at bar. No inference is to be drawn from this enactment as to whether tax attributes can be utilized by a successor corporation under pre-existing law. See Koppers Co., Inc. v. United States, 134 F.Supp. 290, 133 Ct.Cl. 22, 34 (1955), cert. denied 353 U.S. 983, 77 S.Ct. 1279, 1 L.Ed.2d 1142.

4. Section 122(b) (1) (A) provides as is pertinent:
"If for any taxable year beginning after December 31, 1941, and before January 1, 1950, *the taxpayer* has a net operat-

ing loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years * * *." [Emphasis added.]

5. The Government has strongly urged that Public Law 189, 26 U.S.C. (I.R.C.1939) § 122 note (1952 Ed.), ch. 249, 61 Stat. 324, so affected the applicable law in this area as to preclude plaintiff from recovery in this case.
P.L. 189 provided, in summary, that if a successor railroad acquired, prior to January 1, 1950, property from a predecessor railroad in a § 77 proceeding, it was entitled to use the net operating loss carryover of the predecessor (for years after 1940) "so far as possible as if the predecessor corporation had been made use of in such proceeding instead of the successor corporation." Basing the argument on P.L. 189 and its legislative history, the Government asserts that the Congress believed this to be a change in

In two early cases, the Supreme Court was faced with a successor corporation asking that it be allowed to utilize tax attributes of its predecessor. The first, New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), involved a voluntary agreement between creditors and stockholders to transfer all assets and liabilities of the old corporation to a new corporation, organized for this purpose. Stating that tax deductions were a matter of legislative grace, and thus needed authorization by specific provision, the Court required the successor to show that it was the "same taxpayer" as its predecessor in order to be entitled to carry over the old corporation's net operating loss sustained prior to the reorganization. In holding the corporations were not the "same taxpayer," the Court stressed that a corporation and its stockholders are separate and distinct legal entities; therefore, there was no continuity of ownership even though the ultimate individuals in interest were the same.

Five years later, in Helvering v. Metropolitan Edison Co., 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957 (1939), a successor corporation had acquired by merger all the assets and assumed all the liabilities by operation of law of its former subsidiaries. The Supreme Court held that since the transactions were not sales, but rather statutory mergers (or, as in one reorganization, a de facto merger); it came within "the principle that the corporate personality of the transferor is drowned in that of the transferee." 306 U.S. at 529, 59 S. Ct. at 638. Thus the continuing corporation was treated as the same taxpayer as its predecessor, and assumed the latter's tax attributes.[6]

A reconciliation of these two cases was achieved in Stanton Brewery, Inc. v. Commissioner, 176 F.2d 573 (2 Cir., 1949). There a parent holding company survived a statutory merger with its wholly owned operating subsidiary. The court of appeals allowed the resultant corporation the use of an unused excess profits tax carryover of the former subsidiary. It was explained that unlike New Colonial, and like Metropolitan Edison, this was not a voluntary transfer of assets by purchase or contract, but a transfer by operation of law. The statu-

---

the pre-existing law. This being so, it is contended, the Congress implied there was to be no carryover unless the qualifying reorganization was affected before January 1, 1950. Further, the congressional intent was that there was to be no carryback before or after that date.

However, it must be noted that the reorganization involved in this case does not fall under the express provisions of P.L. 189, since the reorganization took place on March 1, 1954. In addition, the courts are in conflict as to whether P.L. 189 provides a clear congressional intent as to the assumption of corporate attributes in reorganizations not expressly covered by that Act. Compare Stanton Brewery, Inc. v. Commissioner, 176 F.2d 573, 577 (2d Cir.1949), with Donohue v. United States, 112 F.Supp. 663 (E.D. Mo.1953). This court in Koppers Co., Inc. v. United States, 134 F.Supp. 290, 133 Ct.Cl. 22, 35 (1955), found no such clear intent. We therefore feel that the issue in the present case should be based upon something less tenuous than congressional intent gleaned solely from its silence.

6. Carryover provisions prior to the 1954 Code used substantially the same phraseology. See, e. g., Revenue Act of 1924, ch. 234, § 206(b), 43 Stat. 260. 26 U.S. C.A. Int.Rev.Acts ("If, for any taxable year, it appears * * * that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year." [Emphasis added.]); Int.Rev. Code of 1939, § 122(b) (1) (A) (see supra note 4). The New Colonial case involved the interpretation of § 204(b) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, 231, which was similar to § 206 (b) of the Revenue Act of 1924, supra. Thus, cases interpreting the term "the taxpayer," and cases which hold a successor corporation to be in effect the same taxpayer as its predecessor for the purpose of utilizing tax attributes are relevant. Metropolitan Edison concerned the successor's deduction of unamortized bond discount and expense in connection with its retiring certain bonds of corporations which, before a merger pursuant to state law, were its subsidiaries.

tory merger resulted in the taxpayer taking on the obligations, including tax liabilities, of its components by operation of law. It should be noted that the facts in Stanton Brewery showed no shift in ownership (the stockholders remained the same), and the business activities did not change after the merger.

In Koppers Co., Inc. v. United States, 134 F.Supp. 290, 133 Ct.Cl. 22 (1955), this court was first faced with the problem. There a newly formed corporation merged, pursuant to state law, a parent company and its subsidiaries who had filed consolidated tax returns prior to the merger. The merger was tax-free under section 112 of the Internal Revenue Code of 1939. We allowed the surviving corporation's unused excess profits tax credit for its first taxable year to be carried back to reduce the consolidated excess profits net income of the corporations before merger. This was done because we felt that the realistic approach of Stanton Brewery best reflected legislative intention. In this respect we could find no reason, nor do we now find any reason, not to allow a surviving corporation in a tax-free merger, which continues the same business with substantially the same ownership, to utilize tax attributes of its predecessors when, but for the merger, the predecessors would have been entitled to take advantage of the privilege in question. We did not deem it essential to discover what legal status the applicable state law gave the components after the merger. Instead we noted that congressional policy since the 1921 Revenue Act showed a more realistic approach to reorganization problems as reflected by the tax-free exchange provisions. "The purpose of these provisions was to allow the corporation to make formal readjustments and carry out ordinary business transactions without disastrous tax consequences." 134 F.Supp. at 296, 133 Ct.Cl. at 32. But whether a tax-free reorganization alone would be sufficient reason to apply the Stanton Brewery doctrine, or "whether the New Colonial Ice Co. case should still be held controlling in the non-merger

and consolidation cases in view of the changes in legislative policy," it was not necessary to decide, since the plaintiff in Koppers resulted from a merger and was not within that category. 134 F.Supp. at 297. 133 Ct.Cl. at 33.

Two other decisions from the courts of appeal, prior to the Supreme Court's next attempt to clarify this area, clearly required that a statutory merger be present before a predecessor's tax attributes could be utilized by its successor. See E. & J. Gallo Winery v. Commissioner, 227 F.2d 699 (9 Cir., 1955); Newmarket Manufacturing Co. v. United States, 233 F.2d 493 (1 Cir., 1956). The court in Newmarket expressly distinguished New Colonial as not involving a statutory merger. 233 F.2d at 498.

Now the scene is set for Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), in which one corporation, the plaintiff, provided management services for 16 separate corporations engaged in selling women's apparel. The latter were operated separately and filed separate income tax returns. These 16 corporations were merged into plaintiff pursuant to state law. Prior to the merger, identical interests owned each corporation; subsequent thereto this was unchanged for plaintiff's stock was issued pro rata in exchange for the stock of the other corporations. Plaintiff argued that it should be allowed to carry over a pre-merger net operating loss of three of its components. These units had continued to suffer losses after the merger, while the other units, and what was now the single enterprise, showed a profit. The question was whether the resulting corporation was "the taxpayer" having the pre-merger losses as required by section 122 of the 1939 Code. The Supreme Court found it unnecessary to discuss the plaintiff's contention that, since a statutory merger was involved, it came within the rule of Metropolitan Edison, and not New Colonial. Rather, the Supreme Court refused to allow the carryover because a "continuity of business enterprise" requirement disposed of the

case. 353 U.S. at 386, 77 S.Ct. at 993. This test required that "the income against which the offset is claimed [must be] produced by substantially the same business which incurred the losses." 353 U.S. at 390, 77 S.Ct. at 994. Obviously the income against which the offset was claimed was not earned by the units ("the same business") which had sustained the loss. Of further importance to the issue before us is the fact that the Supreme Court cited Stanton Brewery, Newmarket, and Koppers as meeting the "continuing enterprise" test. In these three cases, it is apparent that, but for the merger, the old corporation would have been entitled to use the tax privilege involved.

At least one thing is clear from Libson Shops, merger alone is not a sufficient basis for allowing the resultant corporation to succeed to its predecessor's tax attributes. The Supreme Court required that tax attributes of a pre-merger corporation could only be utilized to the extent that one could trace that corporation as a unit in the resulting enterprise. Even then the pre-merger corporation's losses could be used only to offset that unit's income or, conversely, the unit's losses could be carried back only to offset the income of its pre-merger form.

But did the Court, in relying on a "continuing enterprise" doctrine, imply that this test could be satisfied even where there was no statutory merger or consolidation? The Court of Appeals for the Seventh Circuit opinion subsequent to Libson Shops retained the merger requirement.[7] The Internal Revenue Service's answer was also negative. Revenue Ruling 59–395 [8] adopted an allocation procedure in accordance with what Libson Shops seemed to require, but such was to be available only after a statutory merger or consolidation.

Nevertheless, the court of appeals in Donovan Inc. v. United States, 261 F.2d 470, 476 (1 Cir., 1958), stated that no longer was it satisfactory to distinguish New Colonial on the basis of a contrast between statutory merger and other forms of corporate reorganization. In Donovan, there was a tax-free reorganization (under section 112(b) (6) of the 1939 Code), but *not* a statutory merger, pursuant to which a parent corporation absorbed its wholly owned subsidiary. Consolidated returns had been filed by the corporations prior to the reorganization. The court stressed what we had noted in the Koppers case, that the Congress, by adding provisions to the Code to allow certain transactions to be tax-free, recognized that in certain corporate reorganizations there was no realistic economic change. Therefore, the court would not rely on a separate entity concept or merger requirement to preclude the resultant corporation from carrying back a net operating loss sustained after the reorganization by the unit which was the pre-merger subsidiary, to offset the income the subsidiary earned prior to the reorganization.

We interpret Donovan as providing that when there is a tax-free reorganization resulting in a "continuing enterprise" (in the sense that the beneficial ownership and business activities are substantially the same after the reorganization as before, and the transferee corporation assumes the liabilities of the transferor [9]) and, but for the reorganization, the old corporation would be entitled to the tax attribute, then the resultant corporation is entitled to utilize the tax attribute.

It is evident from the facts in the case before this court that the reorganization was not a statutory merger; nor was it a *de facto* merger as that term was applied in Metropolitan Edison, since the plaintiff did not assume all the liabilities of its transferor.

---

7. Patten Fine Papers v. Commissioner, 249 F.2d 776, 780 (7 Cir., 1957) (liquidation of subsidiary and parent's acquisition of its assets).

8. 1959–2 Cum.Bull. 475.

9. See Willingham v. United States, 289 F. 2d 283 (5 Cir., 1961), which included these elements in the "continuing enterprise" doctrine.

But, does the reorganization in question qualify as tax-free, and thus come within the Donovan case? "Tax-free reorganization" is the term generally applied to reorganizations described in section 112(g) (1) of the Internal Revenue Code of 1939, since 112(b) (3) and (4) provide that "no gain or loss shall be recognized" in transfers pursuant to reorganization. Similarly, section 112(b) (10) provides that "no gain or loss shall be recognized" on the reorganization of corporations, "other than a railroad corporation," in certain receivership and bankruptcy proceedings. However, with respect to the transfer of property of a railroad corporation in a proceeding under section 77 of the Bankruptcy Act, which is the type involved here, section 112(b) (9) only provides that "no loss shall be recognized." Gain, it follows, was intended to be recognized. The reorganization pursuant to which plaintiff resulted, therefore, does not meet the technical requirements of a tax-free reorganization.

It is true that section 113(a) (20) provides that the basis of property acquired under a section 77 railroad reorganization shall be the same in the hands of the transferee corporation as it was in the hands of the transferor. However, even if we adopted the Donovan rule that a transferee corporation in a tax-free reorganization may be entitled to its transferor's tax privileges, we certainly cannot say the same should be true merely because a transfer resulted in a substituted basis.

Nor can the plaintiff argue under Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775 (1942), that it has a sufficient continuity of ownership to bring it within the "continuing enterprise" rule. From the aforementioned authorities we have demonstrated that aside from this rule, the plaintiff must first show that it is a resulting corporation from a statutory merger or consolidation, or, possibly under the Donovan case, at least from a tax-free reorganization. This plaintiff has not done, and the fact that it may be a "continuing enterprise" (in the sense of ownership and business activities) avails it nothing.[10] In addition, plaintiff has not assumed substantially all of its transferor's liabilities, a further element

10. We feel it necessary to clarify the rule involved in the Alabama Asphaltic Lime stone Company case. Aside from meeting the literal requirements of a tax-free reorganization provision, to qualify under the relevant provision permitting use of the transferor's basis in a tax-free reorganization, the taxpayer has also been required to show a continuity of interest between the owners of the resulting corporation and the owners of the corporation prior to reorganization. See Le Tulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 (1940). In the Alabama Asphaltic case the reorganization literally qualified as tax-free under the then applicable Code provision. However, under the bankruptcy plan the old stockholders were wiped out, and the creditors of the old corporation received the new stock. In essence, the Supreme Court held that the creditors of the bankrupt corporation, upon initiation of the bankruptcy proceeding, became the "owners." Thus, when the reorganization was finalized and the creditors received the new corporation's stock, the requisite continuity of interest was present. In Atlas Oil and Refining Corp. v. Commissioner, 36 T.C. No. 70 (July 14, 1961), cited by plaintiff in its oral argument, a similar situation was involved. There a reorganization under Chapter X of the Bankruptcy Act literally qualified as tax-free under § 112(b) (10) of the 1939 Code. The insolvent corporation's stockholders were eliminated. The Tax Court held that the second mortgage bondholders, who received preferred stock in the new corporation, held the equity interest in the old corporation prior to the finalized reorganization. This satisfied the continuity of interest requirement.

It is apparent that continuity of interest did not become an issue in these cases until a tax-free reorganization provision was literally met. They do not hold that once a continuity of interest is found the reorganization is tax-free. We do not feel that the rules developed in reference to continuity of interest in the Alabama Asphaltic sense are equally applicable to a determination of continuing ownership in the Libson Shops sense.

of "continuing enterprise" as we interpret the Donovan case.[11]

The plaintiff, in asserting its claim, has primarily relied on the decision of this court in Wabash Railroad Co. v. United States, 164 F.Supp. 226, 143 Ct. Cl. 316 (1958). The issue in that case can be seen from our discussion at page 321, 164 F.Supp. at page 228:

"The defendant contends that [taxpayer] was not entitled to use its bankrupt predecessor's unused excess profits carryovers until the date of the enactment of Public Law 189 in 1947 and that consequently from March 15, 1943 (the due date of [taxpayer's] excess profits tax return for the calendar year 1942), to July 15, 1947 (the day on which Public Law 189 became law), [taxpayer] was, under the law as it then existed, actually liable for the excess profits tax * * * [which was potentially due until the effective date of the Act]."

The taxpayer in Wabash, a successor railroad in a section 77 proceeding as is the plaintiff here, desired a refund of the interest it paid on the "potential deficiency" assessed for its taxable year of 1942. If taxpayer was not actually liable for the excess profits tax in 1942, then there would not be a "potential deficiency" and, of course, no interest would be due. Taxpayer would not have been liable for such tax in 1942, if at that time it had the right to carry over an excess profits tax credit of its predecessor arising in the predecessor's taxable years of 1940 and 1941, which were immediately prior to the effective date of the reorganization on December 31, 1941.

One ground on which our opinion rested, as is indicated by the concurring opinion 143 Ct.Cl. at pages 329 and 330,

164 F.Supp. at page 233, was that the Congress in passing Public Law 189 (the latter is more fully explained in footnote 5 of the present opinion) intended "to give to the successor corporation the right to avail itself of the unused excess profits credit of the predecessor corporation as of the time when the successor corporation was required to file its income tax return." Thus, "no deficiency resulted, and, therefore, no interest is due."

But, and of particular relevancy to the case at bar, we also held alternatively that a successor railroad, like plaintiff, was, even prior to the passage of Public Law 189, the same taxpayer as its predecessor for purposes of utilizing its predecessor's excess profits credit tax carryover. (For this reason also, no "potential deficiency" ever existed, and, therefore, no interest was due.) Although we noted that the Commissioner of Internal Revenue had ruled that the transaction was not tax-free, and that the reorganization did not meet the literal requirements of the applicable Code provisions, we nevertheless treated it as essentially a tax-free reorganization. As a basis for this construction, we interpreted the Alabama Asphaltic Limestone Co. case as holding that when a continuity of ownership was found, a resultant corporation in a bankruptcy reorganization which did not literally qualify as a tax-free reorganization could be treated as a tax-free reorganization. Upon reconsideration of this point, we have decided we were in error in our application of the Alabama Asphaltic Limestone Co. case. The reasons for this are discussed in footnote 10 of this opinion.

Also, when applying the "continuing enterprise" requirement of Libson

11. See also Willingham v. United States, supra note 9. This case illustrates that, even apart from the issue of whether a statutory merger is a condition precedent to the privilege of assuming a predecessor's tax attributes, where an old corporation's charter is retained by a resultant non-railroad corporation in a proceeding under the Bankruptcy Act, the reorganization does not necessarily meet the "continuing enterprise" test of Libson Shops. In disallowing the new corporation's use of a net operating loss carryover of the old corporation, the court gave as one reason the fact that the successor had not assumed all the liabilities of its transferee.

Shops, we assumed that the taxpayer in Wabash had taken over *all* the obligations of its predecessor corporation. Whether or not this element of the "continuing enterprise" test was satisfied in Wabash, it is apparent that it is not satisfied in the case presently before us.

In this reorganization the old stockholders were wiped out; they were no longer in the business; the new stockholders were some of the former creditors of the business. The same business was being carried on, but by a different group of people. Thus, continuing ownership is not present, and, hence, the successor corporation cannot carry back its losses to offset the gain realized by the old corporation.

In light of the foregoing, we are constrained to hold that the plaintiff is not entitled to recover and its petition will be dismissed.

It is so ordered.

DARR, Senior District Judge, sitting by designation, and DURFEE, LARAMORE, and WHITAKER, Judges, concur.