**FOREMOST DAIRIES, INC., Plaintiff,**

v.

**Laurie W. TOMLINSON, as District Director of Internal Revenue for the District of Florida, Defendant.**

No. 4890-Civ-J.

United States District Court
M. D. Florida,
Jacksonville Division.
July 25, 1963.

Milam, LeMaistre, Ramsay & Martin, Ralph H. Martin, Jacksonville, Fla., for plaintiff.

Edward F. Boardman, U. S. Dist. Atty., John F. Murray, Dept. of Justice, for defendant.

McRAE, District Judge.

This case was tried by the Court without a jury. The Stipulations of Fact, exhibits and admissions, all of which were received in evidence, are hereby incorporated into these findings of fact. The Court, however, considers that certain specific facts should be highlighted as constituting the basis of the Court's decision:

## FINDINGS OF FACT

1. Foremost Dairies, Inc., hereinafter referred to as "Delaware", was incorporated under the laws of the State of Delaware on October 31, 1931. At all relevant times, Delaware was engaged in the business of processing and distributing food.

2. For the calendar year 1946, Delaware realized a net profit of $863,563.58; for the year 1947, a net profit of $936,818.67; for the year 1948, a net profit of $1,146,379.75; and for the period from January 1, 1949 to March 26, 1949, a net profit of $229,252.40.

3. Maxson Food Systems, Inc. was incorporated under the laws of the State of New York on November 7, 1945, but it did not commence business until after the close of the calendar year 1945. At all relevant times, Maxson was engaged in the business of processing and distributing food.

4. For its first three years of operation, Maxson sustained net losses as follows: for the calendar year 1946, a net operating loss of $925,032.59; for the year 1947, a net operating loss of

$654,799.87; and for the year 1948, a net operating loss of $336,229.92.

5. On March 26, 1949, Delaware was merged into Maxson. As a result of the merger, Delaware was dissolved by operation of law and ceased to exist, and the name of Maxson was immediately changed to Foremost Dairies, Inc., a New York corporation, Plaintiff herein.

6. As a part of the merger, the assets and liabilities which had previously been Maxson's were carried forward to and became the assets and liabilities of Plaintiff, and the assets and liabilities which had previously been Delaware's were carried forward to and became a part of the assets and liabilities of Plaintiff.

7. Following the merger on March 26, 1949, and throughout 1950, Plaintiff was engaged in the business of processing and distributing food. For the calendar year 1949, Plaintiff realized net income from operations in the amount of $656,616.65. For the calendar year 1950, Plaintiff realized net income from operations in the amount of $1,652,891.23.

8. On its income tax returns for the years 1949 and 1950, Plaintiff reported the net income from operations in the amounts stated above, and it carried forward to offset this income the entire losses suffered by Maxson in the calendar years 1947 and 1948.

9. Upon audit, Defendant, the District Director of Internal Revenue, determined that the claimed net operating loss carry-overs to 1949 and 1950 were not allowable. As a result of this adjustment, additional deficiencies were assessed against Plaintiff which were subsequently paid.

10. Claims for Refund were thereafter timely filed by Plaintiff and were subsequently disallowed by Defendant. This proceeding was thereafter timely instituted by Plaintiff.

11. It was stipulated by the parties, and the Court agrees, that the only question presented for decision in this case is whether or not Plaintiff, in the calendar years 1949 and 1950, was "the taxpayer" or "a corporation" which sustained the losses incurred in the calendar years 1947 and 1948, within the meaning of the applicable net operating loss carry-over provisions of the Internal Revenue Code of 1939. Section 122(b)(2)(C) and (D).

12. The net profits realized by Plaintiff in the year 1949 were produced entirely by those assets which had previously been Delaware's. The assets, which before the merger had been Maxson's actually produced a net loss of $54,097.00 for the first year after the merger.

13. For the calendar year 1950, the assets, which before the merger had been Maxson's, produced net income of $174,381.24. The remainder of Plaintiff's 1950 net income was produced by those assets which had previously been Delaware's.

14. Before the merger in March of 1949, Maxson had sold only frozen foods. In the year of the merger, as a result of operations with the combined assets of what was formerly Delaware and what was formerly Maxson, over 50% of Plaintiff's total sales of $37,890,808.00 was derived from the sale of non-frozen foods, which had not been produced or sold by Maxson in the years before the merger.

15. Before the merger, Norfolk, Virginia, was the farthest south that Maxson had any operations, and at that time all of the operations of Delaware were south of Norfolk, with the exception of an ice cream plant in Brooklyn, New York, and one in Pittsburgh, Pennsylvania.

16. As a result of the merger, the former stockholders of Maxson received less than 27% of the capital stock of Plaintiff, and the former stockholders of Delaware received approximately 73% of the capital stock of Plaintiff.

17. The officers of Delaware before the merger assumed virtually all of the high ranking executive positions of Plaintiff after the merger. Only two of Maxson's officers before the merger

became vice-presidents of Plaintiff after the merger, while the former officers of Delaware became president, secretary, treasurer, and the remaining 13 vice-presidents of Plaintiff after the merger.

18. On December 31, 1948, some three months before the merger, Maxson had total assets of $2,861,288.30, which had produced net sales in its last full year of operation, 1948, of $5,754,525.78. Delaware's assets before the merger were valued at $10,782,482.76 and had produced net sales in the prior full calendar year, 1948, of $35,615,295.53.

19. No net operating loss from the years 1947 and 1948 may be carried over and offset against Plaintiff's income for the calendar year 1949, because Plaintiff was neither "a corporation" which sustained the net operating loss in 1947, nor "the taxpayer" which sustained a net operating loss in 1948.

20. With respect to the year 1950, Plaintiff is entitled to a net operating loss carry-over from the years 1947 and 1948 in the amount of $174,381.24, because only to that extent was Plaintiff, in 1950, "a corporation" which sustained a net operating loss in 1947 or "the taxpayer" which sustained a net operating loss in 1948.

## CONCLUSIONS OF LAW

1. Section 122(b) (2) (D) of the Internal Revenue Code of 1939 provides that if for the calendar year 1947 "a corporation" which commenced business after December 31, 1945, has a net operating loss, there shall be allowed a carry-over of such loss for each of the three succeeding taxable years.

2. Section 122(b) (2) (C) of the Internal Revenue Code of 1939 provides that if for the year 1948 "the taxpayer" has a net operating loss, there shall be allowed a carry-over of such loss for each of the three succeeding taxable years.

3. In Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), the Supreme Court interpreted the carry-over provisions of Section 122. After reviewing the legislative history underlying the statutory provisions, the Court pointed out in its opinion (pp. 386–387, 77 S.Ct. p. 992):

"Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to setoff its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. There is, however, no indication in their legislative history that these provisions were designed to permit the averaging of the pre-merger losses of one business with the post-merger income of some other business which had been operated and taxed separately before the merger. What history there is suggests that Congress primarily was concerned with the fluctuating income of a single business."

The Court's decision in the present case is in harmony with Congressional intent in enacting Section 122 of the Internal Revenue Code.

4. In Libson Shops, the Supreme Court determined that one cannot use a merger to take advantage of pre-merger losses except to the extent that there is a "continuity of business enterprise." The doctrine of Libson Shops has been recognized and applied by the Court of Appeals for the Fifth Circuit. Mill Ridge Coal Company v. Patterson, 264 F.2d 713 (5th Cir., 1959) cert. denied 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63; Willingham v. United States, 289 F.2d 283 (5th Cir., 1961).

5. The decided cases make it clear that the continuity of business enterprise theory enunciated by the Supreme Court in Libson Shops does not turn on the bare legal formalities which are followed in effectuating a merger. In other words, it is not important that, as a matter of form in accomplishing the merger, the same formal legal entity which was in existence before the merger survived the merger and continued as a legal creature thereof. Newmarket

Mfg. Co. v. United States, 233 F.2d 493 (1st Cir., 1956); F. C. Donovan, Inc. v. United States, 261 F.2d 470 (1st Cir., 1958). The fact that Delaware merged into Maxson rather than Maxson into Delaware should not determine the outcome of this case. If Maxson had merged into Delaware, there clearly would be no basis for a carry-over of losses sustained by Maxson before the merger to offset profits made by Plaintiff following the merger.

■ 6. The Court is of the opinion that the continuity of business enterprise theory in Libson Shops means that where a loss corporation and a gain corporation are merged, pre-merger losses may be offset against post-merger gains only to the extent that the business which was previously operating at a loss is now operating at a profit. Furthermore, the business referred to in the sentence above does not mean the formal legal entity but rather the bundle of assets, which previously constituted the pre-merger business unit. Wisconsin Central Railroad v. United States, 296 F.2d 750, 155 Ct.Cl. 781 (1961); Long Corp. v. United States, 298 F.2d 450, 156 Ct.Cl. 197 (1962); Willingham v. United States, 289 F.2d 283 (5th Cir., 1961).

■ 7. Since the Supreme Court in Libson Shops determined that the purpose of the carry-over provisions is not to give a merged taxpayer a tax advantage over those who have not merged, it is necessary here to determine what would have been the tax result if there had been no merger. The facts reflect that, without the benefit of the merger, the carry-over provision of the tax law would have been available to Maxson only to the extent of its profits in 1950, to-wit, $174,381.24. Only to this extent can the losses of 1947 and 1948 be carried forward. No net loss carry-over is allowable with respect to the year 1949, since the Maxson assets did not contribute at all to Plaintiff's net profit in that year.

8. The Court has carefully considered the case of WAGE, Inc. v. Commissioner, 19 T.C. 249 (1952), and does not regard the decision in that case as controlling in the present case. WAGE was decided five years before Libson Shops and was noted by the Supreme Court in footnote 9 of Libson Shops. (353 U.S. at 390, 77 S.Ct. at 994). This Court concludes that the opinion in WAGE is devoid of any reasons in support of its application of Section 122 to the facts of that case.

9. In determining whether there was a continuity of business enterprise, the Court has also taken into consideration the fact that, in the interval between the years when the net operating losses were sustained and the years when Plaintiff sought to deduct such losses, there were radical changes in the ownership of the business, the capital structure of the business, the location of the business operations, the management of the business, and the type of the business and its products. Huyler's v. Commissioner, 38 T.C. 773.

10. Although there may have been valid business reasons for the merger of Delaware and Maxson, as Plaintiff contends, the Court nevertheless concludes that Plaintiff was neither "a corporation" which sustained the net operating loss in 1947, nor "the taxpayer" which sustained a net operating loss in 1948.

■ 11. The Court has reviewed the legislative history underlying subsections (C) and (D) of Section 122(b) (2) and has concluded that Congress intended no different meaning to be ascribed to the phrase "a corporation" in subsection (D), applicable to the year 1947, from the meaning to be ascribed to the phrase "a taxpayer" as it appears in subsection (C), applicable to the year 1948. In each instance, the statute confines allowable losses to the taxpayers sustaining them, i. e., they are treated as personal to such taxpayers and are not transferable to or usable by others.

12. The Plaintiff is entitled to a tax refund to be computed in accordance with paragraph 7, supra, of the Conclusions of Law. The parties shall agree upon the amount of the judgment and submit it to the Court for entry.