**A. C. WILLINGHAM**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18381.

United States Court of Appeals
Fifth Circuit.

April 20, 1961.

As Corrected on Denial of Rehearing
June 2, 1961.

Joe G. Fender, Gordon J. Kroll, Houston, Tex., Eastup & Kroll, Houston, Tex., of counsel, for appellant.

Randolph F. Wheless, Jr., Asst. U. S. Atty., William B. Butler, U. S. Atty., Houston, Tex., for appellee.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and CLAYTON, District Judge.

TUTTLE, Chief Judge.

This appeal from a conviction in a prosecution for an attempt to evade income tax presents the question whether the trial court erred in preventing the accused from showing that no taxes were due for the two prosecution years. The appellant does not here contest the suf-

ficiency of the evidence to sustain a jury's verdict of guilty, based on testimony that he had wilfully set up fictitious expense deductions on the books of the company of which he was president, unless he is to be permitted to reconstruct the income for the years 1952 and 1953. There was undisputed evidence that the false and fictitious entries resulted in defeating the government in collecting part of the tax shown on the return to be due during these years.

What the appellant does assert is that he was entitled to prove that the true tax liability of the corporation for the years 1952 and 1953 should be arrived at by reconstructing the returns for these years after giving effect to substantial loss carry-overs from the years 1949 and 1950.

The government's principal reliance in objecting to proof tendered by appellant below of the amount of loss carry-overs is that these loss carry-overs are not available to appellant's corporation because the government says the corporation is "not the same taxpayer" as that which suffered the losses because the corporation went through a Chapter X Bankruptcy Act (11 U.S.C.A. § 501 et seq.), reorganization subsequent to the losses sought to be carried forward.

For several years prior to November 20, 1950, Gulf Southwestern Transportation Company, Inc., was engaged in the business of a truck carrier operating under a certificate of public convenience and necessity issued by the Interstate Commerce Commission. We take it as true for the purpose of this appeal that during the years 1949 and 1950 it suffered substantial losses, as it had in prior years. This resulted in the filing of a petition for reorganization in the bankruptcy court by the corporation. This was followed by the filing of a plan of reorganization which was finally accepted and made operative by an order of the District Court, November 20, 1950. Under this plan of reorganization, the corporate shell remained and its I.C.C. certificates continued to be effective although its capital structure was somewhat modified in that the plan called for the surrender of the stock by minority stockholders and the retention by one Culbertson of his stock; this stock was to be purchased by A. C. Willingham, the appellant here. Willingham was to pay a sum which Culbertson agreed would be used to pay certain preferred claims against the corporation and to pay a percentage of other claims, including the United States Government's claim for taxes and to pay 10% on the claims of ordinary unsecured creditors. This, of course, amounted to a donation to capital. All other debts of the corporation were wiped out under the plan of reorganization. There was a further partial modification of the capital structure of the corporation in the provision in Willingham's contract to purchase the stock which required him to "cause" the corporation "to assign to Culbertson * * * 5% of the gross revenues of such corporation", such amount to represent a minimum payment which Willingham agreed to make in payment of the purchase price for the stock. It is to be noted that this payment was to be made whether or not there were any profits in the operation, and thus were to be made even though they impaired the capital of the corporation.

Willingham was elected President and took complete charge of the corporation's operation. The corporation's income tax return for the period of November 20 through December 31, 1950 showed a loss of $736.93. The corporation income tax return for the entire calendar year 1950 showed a loss of $28,490.87, of which $27,753.94 represented losses incurred prior to the reorganization. Proof offered by the appellant was to the effect that the 1949 operation showed a net loss of $46,079.36. It was the taxpayer's contention that this figure could, under existing provisions of the 1939 Internal Revenue Code be carried forward

to 1952, and when this was done it would wipe out completely any income for that year. Then, by carrying forward the net loss of $28,490.87 of 1950 to the year 1953, this would also eliminate any deficiency in taxes for that year.

When the appellant sought to tender evidence touching on the net loss for the years 1949 and 1950, prior to the reorganization, government counsel objected on the ground that these net losses could not be applied to determine the tax liability of the corporation resulting from its operations subsequent to the reorganization. The trial court sustained this objection, but by agreement with counsel provided a means by which a proffer of proof could be made in order that the correctness of the court's ruling could be adequately presented on appeal.[1]

It is undoubtedly true, as the trial court held in this case, that conviction under Section 145(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. (Internal Revenue Code of 1939 as amended) 145(b) cannot be supported in the absence of a showing that the government was due a tax in excess of that reported. Koontz v. U. S., 5 Cir., 277 F. 2d 53. As stated in Mertens Law of Federal Income Taxation, Section 55, 37:

"A prosecution for wilful failure to file a return may be maintained where there is no tax due. But no prosecution for wilful attempt to evade or defeat a tax is possible unless there is some tax due."

The government does not contest the correctness of this proposition. It says that on the record here before the court

1. The trial court said in this connection:
"The defendant has offered the 1950 income tax return, or more accurately, you have offered your own retained copy of the income tax return for Gulf Southwestern Transportation Company for 1950. The government contends that it is irrelevant and not admissible for that reason. Defense contends that it reflects a loss of some $28,000.00 which might be carried forward and taken advantage of in 1952 by Gulf Southwestern Transportation Company, on the theory that if that $28,000.00 loss were carried forward, it would reflect that in truth no tax was due by the corporation for 1952, hence your client as president of the corporation, could not have been guilty of attempting to evade taxes when in fact there were no taxes due by the corporation for 1952.
\*       \*       \*       \*       \*
"So, recognizing your right to raise the point that there were no taxes due by the corporation in 1952, we come to the next question, as to whether the loss carryover from 1950 is a proper means of doing so; and it is there that I think your position—I am speaking to the defense attorneys at the moment—is not well taken, because I am of the view that the corporation in 1952, following the corporate reorganization, is not the same taxpayer in contemplation of the statute, so as to permit the loss to be carried forward. \*   \*   \*
"\*   \*   \*   The proceeding was in Bankruptcy Court of the Northern District of Texas for several months, and a

plan of reorganization was ultimately agreed to by all of the creditors, approved by the Court, and was put into operation. What the plan was is reflected by the instrument which you all have shown me and have offered in evidence. It was substantially that Culbertson acquired all of the stock of the corporation, and, by order of the Court, what he didn't acquire was canceled.
"He and the defendant here, Willingham, entered into an agreement contemporaneously with and as a part of the plan of reorganization, whereby Willingham would buy all of the corporate stock from Culbertson, and in fact did so. All of the debts of the corporation were released under the Bankruptcy Statutes; the creditors, of course, received a reduction in the claims which they had against the corporation, one of which, as we noted in our conference, was the collector of Internal Revenue; and, having been released of its old debts and set again upon a new path, the corporation was operated thereafter by Mr. Willingham as its sole stockholder.
"That presents us with the question as to whether the corporation, still operating under the same charter but having been reorganized under Section 77b [11 U.S.C.A. § 207] having its debts forgiven and starting over again under complete change of ownership and management, is the same taxpayer as the term 'the same taxpayer' is used in Section 122 of the 139, [1939] Code [26 U.S.C.A. § 122], which gives the right, in some instances, of a tax loss carry-over."

there is no evidence or proffer of proof which would permit a jury to find that the tax due by the corporation is anything other than as reported in its income tax returns for 1952 and 1953 as modified by the proven falsities touching on the fictitious deductions.

The parties present a difficult question when they ask whether a corporation whose debts have all been wiped out by a Bankruptcy Act reorganization is nevertheless "the same taxpayer" which the terms of the carry-over provision of the Internal Revenue Code say can carry forward the losses which created the forgiven debts in order to wipe out income for tax purposes in future years.

The appellant strongly relies on New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 791, 78 L.Ed. 1348 where in a reorganization proceeding, a new corporation took over the business and the court held that this new corporation was not the same taxpayer and was not entitled to the loss carry-over under a somewhat similar earlier statute. Appellant stresses particularly the language of the Court, "Its words are plain and free from ambiguity. Taken according to their natural import they mean that the taxpayer who sustained the loss is the one to whom the deduction shall be allowed." The appellant points out that in the present case this is unquestionably the same corporate person that sustained the loss prior to reorganization and the case thus fits neatly within the language of the act as applied by the Supreme Court. Of course, there the taxpayer sought to carry the loss over from one corporation to a new corporate entity which was alleged to be in substance the same taxpayer. In denying the right to do so, the court used the language quoted above. Here, the contention is made that, even though greatly changed in substance following the tax loss years the identity of the corporate entity after the reorganization with that before satisfies the requirement.

The government contends that conceptually this is not the same taxpayer, because, although the corporate shell remains the same, the structure is entirely different and the new sole owner of the entire stock of the company has so identified himself with the corporate taxpayer, both by the obligation he undertook touching on the withdrawal of funds from the company, regardless of income, and because of his complete domination and management, as to make it in substance, though not in form, a separate taxpayer. Principal support for the government's theory is found in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 993, 1 L.Ed.2d 924, in which the "continuity of business enterprise" is made the test. In Libson the court found it unnecessary to decide whether the corporate identity principle controlled, because the court found that there was a lack of continuity of a single business enterprise. There the post-merger corporation which had been the parent of sixteen separate operating companies sought to carry forward losses suffered by three of the operating companies to offset profits earned subsequent to the merger. To be sure, the taxpayer corporation was not the same corporation that had suffered the losses, and in that respect is different from the Transportation Company here.

This Court, in Mill Ridge Coal Co. v. Patterson, 5 Cir., 264 F.2d 713, 717, applied the same test of "continuity of business enterprise" in the case of a single corporate taxpayer that disposed of its assets and after change of ownership of the stock engaged in a new type of business: oil distribution as against coal mining. We held there "that the taxpayer here, as in the Libson case, supra, is not the 'taxpayer' within the meaning of 26 U.S.C.A. § 122(b) (2) (C)."

In the case before us we have, instead of a complete reorientation of business activity, substantially the same kind of business carried on, but by a corporation having entirely new stock ownership and with an entirely new corporate structure. Its debts have been wiped out, by the adoption of the plan provided for under the Bankruptcy Act, and its only assets

are saved for it by an agreement of the sole stockholder to pay into the corporation the sums necessary to pay the mortgage holders and state and county in full, the federal government in part and 10% to unsecured creditors. Its structure is further modified by the agreement under which the stock was sold to Willingham. He was to pay to the remaining single stockholder Culbertson enough to reimburse Culbertson for the obligations just enumerated, and he pledged 5% of *gross revenues* of the corporation to secure the payment of the purchase price. This, thus, left the corporation's new reconstituted capital subject to being depleted if operating profits did not yield the 5% of the gross revenues which Willingham was obligated to pay.

■ We think that in every sense of the word except for the uninterrupted corporate existence under the state charter, the taxpayer that commenced operations on November 20, 1950, was as it stated in its own income tax return [2] a new business enterprise. The complete identification of the single stockholder with the corporation, by his personal undertaking to pay off the creditors (to the extent to which they were paid at all) and his pledge of 5% of gross income of the future operations whether or not earned made of this corporation after reorganization a completely different corporate person than when it was incurring the losses here sought to be carried forward. It, therefore, does not fit into the scheme which Congress had in mind when it passed the carryover law, "designed", as the Supreme Court said in Libson, to "permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." 353 U.S. 385, 77 S.Ct. 993. This loss taxpayer "set off its lean years" by having them wiped out in reorganization proceedings.

■ We conclude therefore that on the undisputed facts tendered by Willingham's proffer of evidence to show that there was no tax due for 1952 and 1953, evidence of losses incurred in 1949 and 1950 was not admissible.

We next come to the claim that a loss sustained in 1955 should have been carried back to 1953, and that if this had been done no tax would be due for that year. This would not affect the 1952 conviction, but would be a defense to the 1953 charge. Whatever problems there might be as to loss carry-overs, there can be no difficulties as to loss carry-backs.[3] They operate retrospectively to reduce or extinguish a tax previously due. In an analogous situation imposing the 50% civil penalties on the whole of the initial deficiency with no reduction from the loss carry-back allowed, the Eighth Circuit had this to say:

"The tax for 1943 became due and payable on the date the taxpayer was required to file her 1943 return, and the penalties became due and payable on the same date. The carryback provision does not relieve the taxpayer of the obligation to pay the tax in full when it falls due, and can not be interpreted as deferring taxpayer's duty to pay the tax promptly. Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346. In the case just cited the Court held that where a deficiency and interest have been assessed, a subsequent carryback loss which abates the deficiency does not abate the in-

---

**2.** On each of its income tax returns filed through 1955, the corporation entered as date of incorporation "11–20–50". In the first such return it was also stated, "Reorganization in bankruptcy."

**3.** This basic distinction is recognized by tax writers. See Gutkin, Tax Law Violations and Enforcement; The Handling of Penalty Cases, Proceedings of New York University, Sixth Annual Institute on Taxation, 1948, 189 at 203–4; and Gilman, Current Problems in Criminal Tax Fraud, 33 Taxes 749, 752 (1955); Balter, Fraud Under Federal Tax Law, pp. 349–51 (2 ed. 1953).

terest assessed. The reasoning of the Manning case supports the fraud and delinquency penalties here determined. The decision upon this issue also finds support in other cases. See C. V. L. Corporation v. Commissioner, 17 T.C. 812; Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, affirmed, 1 Cir., 216 F.2d 693; Nick v. Dunlap, 5 Cir., 185 F.2d 674; Petterson v. Commissioner, 19 T.C. 486." Simon v. Commissioner, 8 Cir., 1957, 248 F.2d 869, at page 877.

As this quotation reflects, this Court has taken a like view. Nick v. Dunlap, 5 Cir., 1950, 185 F.2d 674.

■ A taxpayer may not, with impunity, wilfully make false deductions in an attempt to evade the 1953 tax, and which has the actual effect of reducing the tax imposed for that year, after taking into account all deductions that are then available, whether claimed or not, because fortuitously in 1955 a loss occurs, which for tax purposes can be carried back to wipe out the 1953 liability.

■ We think the crime is complete when with wilful intent, a false and fraudulent return is filed for a year as to which, with all benefits arising out of events up to that time taken in his favor, there would still be a tax due by him but for the fraud. Such tax is, in our opinion, the "tax imposed by this chapter." Any adjustment that may be permissible resulting from subsequent losses does not prevent the fraud committed in 1953 from being an attempt "to evade or defeat any tax imposed by this chapter." See Spies v. U. S., 317 U.S. 492, 63 S. Ct. 364, 87 L.Ed. 418 and Goo v. U. S., 9 Cir., 187 F.2d 62, certiorari denied 341 U.S. 916, 71 S.Ct. 735, 95 L.Ed. 1351.

We conclude, therefore, that the carry-overs from 1949 and 1950 were not available to affect the tax liability of Southwestern after reorganization in 1950. Thus the proffered testimony touching on them was irrelevant. We also conclude that the 1953 offense was complete when the tax return for that year was filed, and it could not be undone by subsequent year's tax consequences. The trial court therefore properly rejected the proof touching on these matters.

The judgment is affirmed.