UNITED STATES of America

v.

Allen KLEIN, Defendant.

No. 77 Crim. 234 (VLB).

United States District Court,
S. D. New York.

July 27, 1979.

Robert B. Fiske, U. S. Atty., S. D. N. Y., by Steven Schatz, Asst. U. S. Atty., New York City, for the U. S.

Rosenman, Colin, Freund, Lewis & Cohen by Gerald Walpin, New York City, for Allen Klein.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I. Introduction

Defendant was indicted on three counts of tax evasion for the years 1970, 1971, and 1972, see 26 U.S.C. § 7201, and three counts of filing false tax returns for the same years. See 26 U.S.C. § 7206(1).[1]

---

1. 26 U.S.C. § 7201 provides:

Attempt to evade or defeat tax

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

After trial, the jury returned a verdict of guilty on the false filing count for the year 1970, and of not guilty on the other five counts.

The case is now before me on defendant's motion for judgment of acquittal n. o. v. or, in the alternative, for a new trial. Defendant has also applied, on the basis of his *Brady* claim, *see infra*, for an evidentiary hearing.

## II. *Conclusion*

For the reasons that follow, I deny the motion and the application for a hearing.

## III. *Discussion*

Defendant has stated various grounds for his motion, only four of which are considered herein.[2] These grounds are (A) that the court erred in denying defendant's pretrial motion to dismiss count 4, which motion was based on the allegation that count 4 was a multiplicitous restatement, as a lesser included offense, of count 1; (B) that the court erred in failing to charge the jury, as requested by defendant, that Peter Bennett, the chief Government witness, had a pecuniary motivation to falsify his testimony; (C) that the court erred in precluding defendant from adducing evidence of an alleged character trait of Joel Silver, an associate of defendant; and (D) that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to produce to the defense allegedly exculpatory material regarding a Government agent's interview of the entertainer Bobby

> 26 U.S.C. § 7206(1) provides:
> Fraud and false statements
> Any person who—
>> (1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;
>
> \*　\*　\*　\*　\*　\*
>
> shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.
> The counts covered the same years. Thus the tax evasion counts, 1, 2, and 3, covered 1970, 1971, and 1972, respectively; and the

Vinton. I shall consider these grounds *seriatim.*

### A. *Multiplicity*

■ Defendant argues that the court erred in allowing count 4, on which defendant was convicted, to go to the jury because count 4 was multiplicitous of count 1 and because defendant had timely, if unsuccessfully, moved to have count 4 stricken from the indictment.

The main authority for this argument is *United States v. Harary*, 457 F.2d 471 (2d Cir. 1972). There the court of appeals held that it was reversible error for the trial court "to submit a lesser charge to the jury . . . [when] no 'disputed factual element' which distinguishes the offenses is present *and, in addition, the defendant makes a timely motion or objection at the trial."* *Id.* at 479 (emphasis added).[3]

However, unlike in *Harary, supra,* defendant herein did not make a timely motion or objection at trial with respect to count 4. Nor did he make any such motion or objection before me prior to trial.

Indeed, all of defense counsel's conduct before and during the trial before me indicated that defendant agreed that count 4 (and counts 5 and 6) should go to the jury. For example, defense counsel's proposed jury instructions, which I required be submitted before trial, included five proposed instructions that explicitly pertained to counts 4, 5, and 6. See Defendant's Preliminary Requests For Jury Instructions, Re-

false filing counts, 4, 5, and 6, also covered 1970, 1971, and 1972, respectively.

**2.** After a review of defendant's original motion papers, I held a conference at which I directed that the Government need respond only to the first three grounds considered herein. The fourth ground considered herein was raised by defendant by way of a supplementary motion. To the extent that defendant's motion is based on grounds not considered herein, I deny the motion.

**3.** On the basis of this holding the court concluded that "[s]ince [defendant] cannot be retried on the greater offense because of his acquittal on that count, our only course is to remand to the district court with instructions to dismiss the indictment." *Id.* at 479–80.

quests Nos. 14–19.[4] *See also* Defendant's Supplemental Request For Jury Instructions, Supplementary Request No. 19A (submitted at the close of the evidence). Moreover, during a colloquy prior to the summations, the Government expressly stated its view that there may be a factual element that distinguishes count 4 from count 1 and that, therefore, it would be possible for the jury rationally to return a verdict of guilty on count 4 and not guilty on count 1. Transcript ("Tr.") 5788–91. Although defense counsel termed the Government's attempt to draw the distinction "an academic exercise," *id.* 5790, he did not take the opportunity to object to count 4 as multiplicitous. Instead, he expressly asked for particular instructions "in connection with [counts] 4,

4. In fact defense counsel's proposed jury instructions included two separate and specific requests as to the elements of counts 1, 2, and 3, on the one hand, and counts 4, 5, and 6, on the other. These requests read as follows:

*Request No. 10—Counts One Through Three: The Essential Elements of the Crime of Tax Evasion*

Specifically, counts one, two and three of the indictment charge Mr. Klein with wilfully and knowingly attempting to evade and defeat part of the income tax due and owing by him and his wife for the calendar years 1970, 1971 and 1972 by preparing, signing and mailing false and fraudulent income tax returns for those years.

Three essential elements are required to be proved in order to establish the offenses charged in these counts of the indictment:

*FIRST*: The prosecution must prove beyond a reasonable doubt that a substantial additional amount of Federal income tax was due and owing from Mr. Klein for each of the calendar years in question, over and above the amount of tax declared or disclosed in the defendant's income tax return for each calendar year; and

*SECOND*: The prosecution must prove beyond a reasonable doubt that Mr. Klein in fact knew a substantial amount of Federal income tax was due and owing to the government for each of the calendar years in question, over and above the amount declared or disclosed in the income tax return for each calendar year; and

*THIRD*: The prosecution must prove beyond a reasonable doubt that Mr. Klein knowingly and wilfully attempted, in some manner, to evade or defeat such additional tax, with the specific intent to defraud the government of such additional tax.

The burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime for each of the calendar years mentioned. Unless the prosecution proves beyond a reasonable doubt every essential element, you must acquit. *Willingham v. United States*, 289 F.2d 283 (5th Cir.), *cert. denied*, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31 (1961); *Ingram v. United States*, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959).

*Id.*

*Request No. 14—Counts Four through Six. The Essential Elements of the Crime of False Filing*

Specifically, counts four, five and six of the indictment charge Mr. Klein with unlawfully, knowingly and wilfully making, subscribing and filing the income tax returns for the years 1970, 1971 and 1972, which were verified by written declarations that they were made under the penalties of perjury, which he did not believe to be true and correct as to every material matter at the time he made, subscribed and filed the returns in that he then and there knew and believed that he had substantial income in the form of cash payments from the sale of promotional records, not stated upon the returns;

Four essential elements are required to be proved in order to establish the offenses charged in counts four through six of the indictment.

*FIRST*: The prosecution must prove beyond a reasonable doubt that the tax return in question was signed and filed by Mr. Klein,

*SECOND*: The prosecution must prove beyond a reasonable doubt that the tax return in question contains or is verified by a written declaration that it is made under the penalties of perjury,

Mr. Klein does not dispute either of these elements, that is, that he signed and filed the tax returns in question which, as all such returns, contain a written declaration that it is made under penalties of perjury,

*THIRD*: The prosecution must prove beyond a reasonable doubt that, at the time the return was so signed and filed, Mr. Klein did not believe the return to be true and correct as to a material matter, here being the income reported thereon; and

*FOURTH*: The prosecution must prove beyond a reasonable doubt that such act was done wilfully and with criminal intent.

As stated before, the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime for each of the fiscal years mentioned. Unless the prosecution proves beyond a reasonable doubt every essential element, you must acquit.

*Kolaski v. United States*, 362 F.2d 847, 848 (5th Cir. 1966).

*Id.*

5, and 6. . . . " Tr. 5791. *See also id.* 5792. Finally, I explicitly asked counsel this question: "The one problem I want to raise with you has to do with the elements of Counts 4, 5, and 6. Does either of you have any trouble with those elements?" Tr. 5837. Although defense counsel did state that he believed that the factual issue in counts 4, 5, and 6 was the same as the factual issue in counts 1, 2, and 3, Tr. 5839–40, his statement was made for the sole purpose of clarifying what he believed to be the proper instructions as to counts 4, 5, and 6. Defense counsel did not object, explicitly or implicitly, to the submission of counts 4, 5, and 6 to the jury.

Defendant concedes that he never raised the issue of multiplicity before me. He argues, however, that he satisfied the requirements of *Harary, supra,* by having made an unsuccessful pre-trial motion to dismiss counts 4, 5, and 6 before Judge Metzner prior to the first trial of this case.[5]

In this connection, defendant relies on the doctrine of the law of the case as a reason for his failure to renew the motion before me prior to or during the retrial.[6]

 Particularly in light of the fact that defendant zealously renewed before me many applications upon which Judge Metzner had previously ruled[7] and in light of the fact that the parties understood that Judge Metzner's rulings would not be considered binding,[8] I reject defendant's law of the case argument. In this circuit the law of the case doctrine is a discretionary doctrine and not a rule of law that precludes reconsideration by one judge of a ruling earlier made in the same case by another judge. *E.g., Dictograph Prods. Co. v. Sonotone Corp.,* 230 F.2d 131, 134–36 (2d Cir.) (L. Hand, J.), *appeal dismissed,* 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956).[9] Thus, in *United States v. Richardson,* 291 F.Supp. 441 (S.D.N.Y.1968), the court expressed the opinion that a defendant in a criminal case

---

**5.** The case was first tried before Judge Metzner in 1977. The trial resulted in a hung jury. After appellate proceedings, the case was returned to me for retrial.

**6.** An appropriate time for defendant to renew the motion would have been at the conclusion of the Government's case in the retrial before me. *See United States v. Universal C. I. T. Credit Corp.,* 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260 (1952):

Whether an aggregate of acts constitute a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and *may have to await the trial on the facts.* . . . [A] draftsman of an indictment may charge crime in a variety of forms to avoid fatal variance of the evidence. He may cast the indictment in several counts whether the body of facts upon which the indictment is based gives rise to only one criminal offense or to more than one. To be sure, the defendant may call upon the prosecutor to elect or, by asking for a bill of particulars, to render the various counts more specific. In any event, by an indictment of multiple counts the prosecutor gives the necessary notice and does not do the less so because *at the conclusion of the Government's case the defendant may insist that all the counts are merely variants of a single offense.*

(emphasis added).

Defendant now contends, as he contended in his pretrial motion papers submitted to Judge

Metzner, that the parties agreed all along that the only factual issue in the case relevant to any of the counts was whether or not Bennett gave defendant proceeds from the sale of promotional records. However, the Government explicitly asserted in its opposition papers to defendant's motion before Judge Metzner that "[w]hether or not there is a multiplicity in this indictment can not be properly determined until the Government's case is presented." Government's Memorandum of Law in Opposition to Defendant's Pre-Trial Motion at 15 (filed June 7, 1977). In light of the fact that there is often an important difference between what the parties expect will be proved at trial and what is actually proved at trial, the Government's assertion seems to be correct.

**7.** For example, although Judge Metzner had allowed evidence of a prior conviction of defendant to be received in the first trial, defendant moved before me to have evidence of the conviction excluded in the retrial. *See* Memorandum in Support of Defendant's Pre-Retrial Motions at 5–17 (filed December 13, 1977).

**8.** *See id.* at 4–5.

**9.** Cited in Memorandum in Support of Defendant's Pre-Retrial Motions as support for the proposition that "[t]he law of the case doctrine is not applicable to bind the judge presiding at a second trial by an order or ruling made by the judge at the first trial." *Id.* at 4.

need not obtain leave of court to renew before a second judge a motion previously ruled upon adversely to him by a different judge:

This court is of the opinion that leave to renew a motion is not necessary to its renewal under the modern interpretation of "law of the case". *Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131 (2d Cir. 1956), appeal dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956); *Chain Locations of America, Inc. v. East Hudson Parkway Authority*, 280 F.Supp. 396 (S.D.N.Y.1967). This interpretation provides that reconsideration of a motion on its merits is a matter of discretion with the second judge, . . . The fact that this modern interpretation has been applied to date only in civil cases is of no moment. American jurisprudence favors the criminal defendant over the civil in that his burden of proof is smaller and he is presumed innocent of wrongdoing. Consequently, he should be given at least as favorable treatment as the civil party in renewing his motions, especially since his life or liberty is at stake.

*Id.* at 443. Accordingly, defendant's multiplicity argument is rejected.[10]

### B. *Alleged Pecuniary Motive*

■ Defendant also argues that the court erred in rejecting defendant's request that the jury be instructed that Peter Bennett, the chief Government witness,[11] had a motive to lie on the stand in that Bennett, whose civil tax liability for the relevant years is still undetermined, may have believed that his helping to obtain a convic-

tion of defendant would curry him favor with the Internal Revenue Service. My refusal to give such an instruction was based in large part on a hearing held out of the presence of the jury at which I.R.S. Agent Sidney Connor, under examination by both parties and the court, gave testimony that firmly established that Bennett had no reason to believe that he would stand to gain pecuniary benefit from the I.R.S. by helping to obtain a conviction of defendant. Given the absence of evidence that Bennett could have reasonably believed that he stood to gain pecuniarily, I concluded that the requested instruction regarding Bennett's pecuniary motive to falsify was not warranted.[12]

### C. *Joel Silver's Alleged Character Trait*

■ The evidence in the Government's case against defendant tended to establish that Bennett gave Joel Silver, an associate of defendant, some of the proceeds from the sale of promotional records which Silver was to hold for defendant, and that Bennett told Silver that the money had come from the sale of such records. Defendant contends that Bennett gave this information to Silver as a part of an effort to frame defendant so that Bennett would have a scapegoat in case Bennett, who defendant asserts was working alone in the record selling scheme, was discovered. Defendant further contends that Silver was particularly selected by Bennett in the frame-up because Silver was known to be "closed-mouthed" and thus would be unlikely to discuss the matter with anyone, including

---

10. *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), relied on by defendant in support of his law of the case argument, is distinguishable from this case. There, the pre-trial motion to dismiss on venue grounds had been denied by the trial court, but the court of appeals, which reversed on another ground on the first appeal, specifically approved of the laying of venue in the trial court. *Id.* at 633, 81 S.Ct. 358. In light of the court of appeals' ruling concerning venue, it was not open to defendant to renew his venue motion in the trial court upon the retrial.

11. Bennett, who has pled guilty to one count of false filing for 1970, was alleged by the Govern-

ment to have been the co-conspirator and right-hand man of defendant in the record selling scheme that gave rise to the prosecution in this case.

12. Thus this case is distinguishable from *United States v. Frank*, 494 F.2d 145 (2d Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974). There it was clear that the prosecution witness had a pecuniary motive to falsify because convictions in the criminal suit would have operated as collateral estoppel in favor of the witness in her then-pending civil suit against the same defendants. *See id.* at 160.

the defendant Klein himself. In light of all this, defendant contends that the court erred in precluding him from adducing testimony from Silver and from Henry Newfeld, another of defendant's associates, to the effect that Silver was known to have the character trait of being closed-mouthed.

The relevant principle is stated in Rule 404, Fed.R.Evid., which reads in part:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, . . .

It is true, as defendant asserts, that Rule 404 does not preclude character evidence if that evidence is offered to prove a material proposition, rather than to prove an act:

Character evidence offered to prove character when it is a consequential, material proposition, rather than to prove an act, does not fall within the prohibition of the rule and, consequently, is admissible.

2 Weinstein's Evidence ¶ 404[01] at 404–12 (Bender 1977) (footnotes omitted). It is also true, as defendant asserts, that the evidence regarding Silver was offered by defendant to prove a material proposition, namely, that Bennett chose to go to Silver because of Silver's alleged character trait. To that extent, therefore, the evidence was *prima facie* admissible. *See* Rule 402, Fed. R.Evid. (relevant evidence generally admissible).

However, the evidence, if admitted, would also have had the inevitable effect of tending to lead the jury to believe that, upon the relevant occasions, Silver acted in conformity with the alleged trait and that, for that reason, rather than because, *e.g.,* he believed Bennett, he refrained from talking with Klein about the matter. Thus, in light of the dual purpose of the proposed evidence and because one of the purposes was impermissible under Rule 404, I was authorized to exclude the proposed evidence. To the extent that the proposed evidence was offered for the purpose of

proving that Silver acted in conformity with the alleged character trait on a particular occasion, Rule 404 itself authorized the exclusion of the evidence. *See Reyes v. Missouri Pac. R. R.,* 589 F.2d 791, 793 (5th Cir. 1979) ("This general rule of exclusion [in Rule 404], applicable to both civil and criminal proceedings, is based upon the assumption that such evidence is of slight probative value yet very prejudicial.") (footnotes omitted). To the extent that the proposed evidence was offered for the purpose of proving a material, consequential proposition, Rule 403 authorized the exclusion of the evidence because the evidence still would have had the inevitable effect of tending to lead the jury to believe that, upon the relevant occasions, Silver acted in conformity with the alleged character trait. Rule 403, Fed.R.Evid. ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, *or misleading the jury* . . . . ") (emphasis added).[13]

This reasoning is consonant with the fact that I permitted defendant to adduce evidence from Bennett himself regarding Silver's alleged character trait. *See* Tr. 1206. What Bennett himself believed about Silver's having the alleged character trait was much more probative of defendant's frameup theory than what Silver or Newfeld believed. *See* Rule 404. Moreover, evidence of Bennett's belief was sufficiently probative as to that theory so that Rule 403 considerations did not require me to exclude the evidence on the grounds that the evidence also was likely to have had the effect of tending to lead the jury to believe that, upon the relevant occasions, Silver acted in conformity with the alleged trait.

### D. *Defendant's Brady Claim*

■ As a fourth ground for his motion, defendant relies on *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the

---

**13.** Rule 403, also authorized the exclusion of the disputed evidence even if such evidence is deemed to be evidence of "habit." *See* Rule 406.

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). In particular, defendant argues that the Government violated its *Brady* obligations by failing to produce to defendant information regarding an interview between I.R.S. Agent Sidney Connor and the entertainer Bobby Vinton.

Vinton was once a client of defendant, and Vinton records are alleged to have been among those involved in the promotional record selling scheme that gave rise to the prosecution in this case. Bennett testified that Klein supplied him with the Vinton promotional records that Bennett allegedly sold for Klein.

Klein now contends that information gained from the April 13, 1979 interview between Connor and Vinton could have been used to impeach Bennett on this point. The Government, on the other hand, contends that the evidence would not have been "material to either guilt or to punishment," *Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1197, and thus need not have been provided to defendant.

The Government also contends, and I agree, that the relationship between defendant and Vinton was such that, regardless of what information the disputed interview had yielded, the Government would have had no *Brady* obligation to defendant with respect to such information. The reason for the absence of such obligation is that, given the relationship between defendant and Vinton, defendant "was also on notice of the essential facts which would have enabled him to call [Vinton] and thus take advantage of any exculpatory testimony that he might furnish." *Williams v. United States,* 503 F.2d 995, 998 (2d Cir. 1974) (alternative holding). "In view of this, [I] see no occasion to invoke *Brady*." *United States v. Tramunti,* 500 F.2d 1334, 1350 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95

S.Ct. 667, 42 L.2d.2d 673 (1974). *Accord, United States v. Ruggiero,* 472 F.2d 599, 604–05 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973).[14]

SO ORDERED.

---

14. In view of my disposition of defendant's *Brady* claim, I need not reach the question of whether the information gained in the Vinton interview was "material" within the meaning of *Brady.* Accordingly, no evidentiary hearing on that question is necessary.