JEROME H. VANCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vance v. Commissioner
Docket No. 28143-84
United States Tax Court
T.C. Memo 1989-95; 1989 Tax Ct. Memo LEXIS 95; 56 T.C.M. (CCH) 1408; T.C.M. (RIA) 89095; March 13, 1989. Jerome H. Vance, pro se. Willard N. Timm, Jr., for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: For petitioner's taxable year ended in 1980, respondent determined a deficiency in petitioner's Federal income tax of $ 6,884 and additions to tax under sections 6654 and 6653(b)[1] in the respective amounts of $ 434 and $ 3,442. In an answer to the filed petition, respondent asserted that his previously determined deficiency in petitioner's 1980 income tax should be increased in the amount of $ 8,005 and that there should be consonant increases in the determined additions to tax under sections 6654 and 6653(b) in the respective amounts of $ 514.64 and $ 4,002. [2] Based on the notice of deficiency and respondent's answer, we find that the total deficiency is $ 14,889.00 and the additions to tax under sections 6654 and 6653(b) are $ 948.64 and $ 7,444.00, respectively. After concessions, [3] the issues for determination *97 are: 1) whether petitioner underreported his 1980 income by incorrectly using a fiscal year ended February 28, 1980, rather than a calendar year in reporting taxable income from commodity trading; 2) whether $ 5,375 in business expenses were incurred in 1980; 3) whether petitioner underreported Treasury bill interest income in the amount of $ 5,680.44 in 1980; and 4) whether petitioner is liable for the additions to tax imposed under sections 6654 and 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. *98 The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Jacksonville, Florida, at the time he filed his petition. Petitioner filed his 1980 individual income tax return between June 7, 1981 (signature line), and June 15, 1981, with the Atlanta Internal Revenue Service Center. This June filing was made pursuant to a two-month extension request -- Form 4868 -- filed by petitioner between April 9, 1981, and April 14, 1981. [4]
Petitioner received an undergraduate degree in mathematics and a masters degree in actuarial sciences from the State University of Iowa. He was a member in the Society of Actuaries and served as a Senior Actuarial Consultant in the insurance consulting branch of the accounting firm of Coopers and Lybrand from 1976 to the end of 1979. During his years of employment with Coopers and Lybrand, petitioner earned approximately $ 40,000 per year. From *99 mid-January of 1980 through sometime in June of 1980, petitioner worked in Atlanta, Georgia, as a manager in the Management Consulting Division of Peat, Marwick, and Mitchell, a big-eight accounting firm. Petitioner was hired at Peat, Marwick, and Mitchell at an annual salary of $ 47,500, and from January to June of 1980 this firm paid him $ 28,390. During 1980, three Treasury bills were purchased on petitioner's behalf through an account -- no. 252661620 -- carried in his name with ContiCommodity, a subsidiary of Continental Grain Company. The first purchase in the amount of $ 97,012.50 was for a bill with a maturity date of May 15, 1980. The second purchase occurred on May 16, 1980, for a price of $ 97,825 and was tied to a bill maturing on August 14, 1980. The third bill was purchased for $ 48,754 on August 28, 1980, and had a maturity date of November 28, 1980. When the first purchased bill matured on May 15, 1980, petitioner's ContiCommodity account was credited for $ 100,000. Portions of the second purchased bill were sold on July 8, 1980, and July 10, 1980. On these sales, petitioner's account was credited in the respective amounts of $ 19,810.83 and $ 9,892.08. When *100 the remaining portion of the second bill matured on August 14, 1980, petitioner's account was credited for $ 70,000. The third bill was transferred in two sales occurring on October 10, 1980, and November 12, 1980. Petitioner's account was credited on these respective sales in the amounts of $ 9,808.47 and $ 39,760.50. Petitioner began trading in commodities in 1973. His trading continued in 1980 and was done through his ContiCommodity account -- no. 252661620. Petitioner was not licensed as a commodity broker or dealer; he did not advertise his services to the public as such a dealer; and he had no customers relative to his trading. In trading commodities, petitioner realized profits and losses on such trades; he earned no commissions. For the calendar years 1977 through 1980, petitioner's commodity transactions, as stipulated by the parties, resulted in the following losses and profits: [5]
Commodity Futures Transactions (1977 - 1980)
1977
1978
1979
1980
Short-term
gain (losses)
-(4,811.00)
-(200.50)
-(41,642.40)
+ 315,353.35 Long-term
gain (losses)
-(1,250.50)
-0-   + 22,074.50 - (279,767.25)
-(6,061.50)
-(200.50)
-(19,567.90)
[6] +   35,586.10 Carryover
from prior
year
-( 8,900.00)
-(12,961.50)
-(10,161.50)
-(26,729.40)
Total
-(14,961.50)
-(13,161.50)
-(29,729.40)
+  8,856.70 Maximum losses
allowed in
this tax year
-( 2,000.00)
-( 3,000.00)
-( 3,000.00)
-0-    Carryover to
succeeding
tax year
-(12,961.50)
-(10,161.50)
-(26,729.40)
-0-    Taxable in 1980 (Based on calendar year for reporting income)
[7] +  8,856.70 *101 In submitting his 1980 Form 1040, petitioner listed that he had no Federal income tax withheld -- Line 55 -- and had made no 1980 estimated tax payments -- Line 56. On the first page of his 1980 individual income tax return, petitioner did not claim a taxable period other than a calendar year. He also did not report any capital gains or losses tied to his commodity trading. Moreover, at no time did he make a request to respondent either by letter or on respondent's forms for a change of accounting method or a change of accounting period for the year 1980. *102 On Schedule C, attached to this 1980 return, petitioner calculated a loss associated with a sole proprietorship titled Universal Life Insurance Commodity Fund ("ULICF"). The proprietorship's listed "main business activity" was "commodity trading" and its taxable year was given as a fiscal year extending from March 1, 1979, to February 28, 1980. The total proprietary loss of ULICF calculated on this schedule was $ 172,476.20 and represented a summation of an assortment of deductions totalling $ 5,375 [8] and losses in commodity trading of $ 167,101.20. On an appendix attached to this 1980 return and labelled "Page CC-1", petitioner claimed that, of this $ 172,476.20 reported loss, $ 35,700, $ 37,599.97 and $ 41,036.46 could be carried back to his respective taxable years of 1977, 1978, and 1979, that $ 33,049.77 could be carried forward to taxable years after 1980, and that $ 25,090 could be claimed as a business loss in 1980. When subtracted from his reported 1980 wages of $ 28,390, this $ 25,090 figure had the result of reducing petitioner's reported gross income figure to a stated adjusted gross income figure of $ 3,300. Based on this adjusted gross income figure, petitioner *103 consequently reported that he had no 1980 tax liability and that he was entitled to a refund of $ 600. This $ 600 sum was traceable to a $ 600 payment petitioner submitted with the Form 4868 he filed between April 9, 1981, and April 14, 1981. On individual income tax returns he filed for taxable years 1973 through 1975, petitioner reported his income and deductions on a cash basis method of accounting and did not claim taxable periods other than calendar years. Additionally, in taxable years 1974 and 1975 petitioner reported his commodity trading gains and losses as capital gains and losses. For taxable years 1976 through 1979, petitioner *104 filed purported tax returns on which he claimed no taxable periods other than calendar years. These purported returns contained numerous objections on petitioner's part to the information sought as being incriminatory and in violation of his Fifth Amendment rights. Moreover, these same four returns listed no information from which petitioner's actual tax liability for the taxable years 1976 through 1979 could be determined. Finally, petitioner's 1981 tax return covered a taxable period based on a calendar year and reflected no income or losses tied to petitioner's trading in commodities. A Criminal Information was filed against petitioner in October 1982 charging him with three counts of failing to file individual tax returns, one count for each of the years 1977 through 1979. Petitioner was convicted by a jury on all three counts on May 24, 1983, and sentenced to one year in prison, a $ 5,000 fine, and five years probation. Prior to the Information being filed against him, petitioner and his criminal attorney, Scott McClarty, met with an attorney of the Department of Justice on April 24, 1981. During the course of this meeting, petitioner raised the proposition that, through *105 his sole proprietorship, ULICF, he had generated huge losses in commodity trades through a fiscal year ended in February of 1980 which, if carried back, would wipe out any income taxes he owed for the taxable years 1977 through 1979. Petitioner submitted to his employer on or about January 16, 1980, a Form W-4 claiming to be "exempt" from Federal income tax withholding. In submitting the Form W-4, petitioner certified under the penalties of perjury that he had incurred no tax liability in 1979 and that he anticipated incurring no tax liability for 1980. Petitioner had previously submitted on February 7, 1978, November 2, 1978, and October 10, 1979, other Forms W-4 claiming exemption from Federal income taxes. OPINION In addressing the numerous issues in this case, we first turn to a procedural matter regarding which party to this litigation bears the burden of proof with respect to the separate issues in this case. In the notice of deficiency petitioner received with respect to his 1980 tax return, respondent disallowed the full $ 172,476.20 proprietary loss petitioner had claimed on his Schedule C with respect to ULICF. Respondent based his disallowance of this full loss *106 on his objection to petitioner's use of a fiscal year to report $ 167,101.20 in commodity trading losses and his objection to petitioner's claiming $ 5,375 in expenses tied to ULICF which were not shown to "ordinary and necessary business expenses" or amounts "expended for the purposes designated." Because this disallowance of the loss and respondent's stated objections to the loss initially appeared in the notice of deficiency, petitioner bears the burden of proof with respect to his use of a fiscal year to report the tax consequences associated with the commodity trading and with respect to the $ 5,375 in claimed ULICF's business expenses. Rule 142(a). Furthermore, if we uphold any of respondent's determined deficiency, petitioner bears the burden of showing that he is not liable for any addition to tax under section 6654. Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960; see also Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980); Pascarelli v. Commissioner,55 T.C. 1082, 1100 (1971). In his answer, respondent asserted *107 an increased deficiency in the amount of $ 8,005 and consonant increases of $ 514.64 and $ 4,002 in additions to tax under sections 6654 and 6653(b), respectively. In support of this increased deficiency respondent alleged the following: a. Petitioner received income from Coopers and Lybrand in 1980 in the amount of $ 2,295.00 which amount was reported to respondent, but which amount was not reported on petitioner's 1980 return. [9]
b. Petitioner received in 1980 from ContiCommodities $ 5,680.44 from certain bearer bonds held by petitioner which petitioner failed to report on his 1980 return. c. Petitioner bought and sold commodities in 1980. d. During 1980, petitioner had short term gains of $ 315,353.35 and short term losses of $ 279,767.25 resulting in a short term gain of $ 35,586.10. e. Petitioner in 1980 had a loss carryover from prior years of $ 26,729.40, resulting in a short term gain of $ 8,856.70 in 1980 which amount was not reported on his 1980 return. Because *108 the increased deficiency appears in his answer, respondent bears the burden of proof on those items alleged to support the asserted deficiency increase. Rule 142(a). Additionally, respondent bears the burden of proof on the fraud issue raised in this case. Rule 142(b). We now address the issue [10] of whether petitioner underreported his 1980 income by incorrectly using a fiscal year, ended February 28, 1980, [11] rather than a calendar year in reporting taxable income from trading in commodities. In support of his position, petitioner would have us look to former section 1.441-1(b) (3), Income Tax Regs.[12] This regulatory section provides that, A new taxpayer in his first return may adopt any taxable year which meets the requirements of section 441 and this section without obtaining prior approval. The first taxable year of a new taxpayer must be adopted on or before the time prescribed by law (not including extensions) for the filing of the return for such taxable year. * * * *109 In citing this regulation and utilizing a fiscal year to report the commodity trading gains and losses, petitioner implicitly argues that ULICF represents a "new taxpayer." Petitioner has, however, presented no evidence showing that ULICF is indeed a "new taxpayer" within the meaning of section 7701(a)(14). [13] See Keller v. Commissioner,77 T.C. 1014, 1034 (1981), affd. 723 F.2d 58 (10th Cir. 1983). To support his position that ULICF represents a new and separate taxpayer, petitioner presents only meager documentation. The documentation consists of the Schedule C attached to his 1980 Form 1040 and three billing statements to Mr. Paul Stanier at Professional Insurance Corporation. We do not look to the Schedule C as substatiating petitioner's claimed right to use a fiscal year ended February 28, 1980, because it is this very schedule which is in question. The Schedule C in no way establishes the separate existence of ULICF. We also find that the billing statements to Mr. Stanier have little evidentiary value. The statements originate *110 from "Jerome H. Vance" and relate to billing dates in August, 1983, January, 1984, and July, 1984. Petitioner has in no way linked ULICF to these billing statements, and the three billing dates correspond to years far removed from that in issue. Finally, we point out that the ContiCommodity documents covering the trades in issue are listed in petitioner's name, carried on his account number, and divided into monthly periods with no enumerated divisions relating to any fiscal year. Petitioner has not shown that ULICF is a new taxpayer as required by section 1.441-1(b)(3), Income Tax Regs. We are convinced that ULICF is only an extension of petitioner, his dummy or alter ego, and is not an entity distinct from petitioner so as to be a "new taxpayer." Consequently, we find that ULICF is not a separate and distinct taxpayer from petitioner himself. Both before and after 1980 petitioner, a cash basis taxpayer, utilized a calendar year as his taxable year. In 1980, petitioner filed an extension request -- Form 4868 -- based on a calendar year, and the first page of his 1980 Form 1040 indicated that he was reporting on a calendar year. He at no time requested *111 a change in his method or period of accounting. Petitioner must, therefore, report the gains and losses from the commodity trades in issue on a calendar year time frame; he may not utilize a fiscal year ended February 28, 1980. This calendar year reporting results in an additional $ 8,856.70 in taxable income to petitioner in 1980. [14]
As an aside, we note that had we found ULICF to be a separate and new taxpayer, ULICF would still not be entitled to a fiscal accounting period. With the exception of the Schedule C filed with petitioner's 1980 Form 1040, no records were produced as evidence which would establish that ULICF had established a fiscal accounting period by means of books and records kept on such a period. See Maclean v. Commissioner,73 T.C. 1045, 1051 (1980); Freudmann v. Commissioner,10 T.C. 775 (1948). Section 441(g) provides that if the taxpayer keeps no books or has no annual accounting period, its taxable year shall be the calendar year. Former section 1.441-1(e)(2), Income Tax Regs., [15] provides, "A fiscal year will be recognized only if it is established as *112 the annual accounting period of the taxpayer and only if the books of the taxpayer are kept in accordance with such fiscal year." Petitioner did not show that ULICF had kept books and records as required by section 441; therefore, ULICF would not have a right to report its income on the basis of a fiscal year ended February 28, 1980. Cf. Brooks v. Commissioner,6 T.C. 504 (1946); Stryker v. Commissioner,36 B.T.A. 326 (1937). We now turn to the second issue in this case. Petitioner has presented no evidence substantiating the $ 5,375 in assorted expenses he claimed as a portion of the reported $ 172,476.20 ULICF loss. Additionally, he has not addressed on brief any issue tied to this expensed sum. We consequently hold that petitioner has failed to carry his burden of proof and has implicitly conceded the properness of respondent's determination in this regard. Rules 142(a), 149(b); cf. Money v. Commissioner,89 T.C. 46, 48 (1987). *113 [16]
We next focus on the issue of whether petitioner underreported Treasury bill interest income in 1980 in the amount of $ 5,680.44. In support of this asserted increased income amount, respondent presented the testimony of Edward C. Lauduskie, an Internal Revenue Service agent who in an eight-year time span had audited numerous "commodity tax returns" and had personally examined Mr. Vance's commodity records for the years 1977 through 1980. Mr. Lauduskie testified that: What happened in this account, the taxpayer, Mr. Vance, in this case, had money that he had put into the account, rather, which is normal in the commodity account, rather than let it sit there idle, the broker would usually buy a Treasury bill. And, then when the Treasury bill matured, of course, the investor would have interest income to report at that time. To counter respondent's assertion *114 and evidence, petitioner has presented no credible, substantiated evidence. We find, therefore, that respondent has successfully carried his burden with respect to this Treasury bill interest issue and, therefore, sustain his claimed assertion that petitioner's 1980 income must be increased in the amount of $ 5,680.44. In sustaining this assertion we note that Treasury bills are discount instruments -- that is, while par value is returned at maturity, the purchase price will be less than par by the amount of the discount. The interest or return on the investment, therefore, is equal to the discount and is received at maturity. * * * * * * Tax treatment of Treasury bill returns is completely straightforward. The return on these discount instruments is the difference between the price paid for the bill and the price received either at maturity or when sold. In either case, the return is considered ordinary income and is taxed as such. [M. Blume & J. Friedman (eds.), Encyclopedia of Investments 964 and 967 (1982). Emphasis added.] Respondent determined and asserted an addition *115 to tax under section 6654 for the underpayment of estimated tax. In 1980, petitioner did not make any estimated tax payments nor were amounts withheld from his income. We have also found that a deficiency exists in petitioner's payment of his 1980 tax liability. Once a deficiency has been established, section 6654 is mandatory unless petitioner can bring himself within certain exceptions not here applicable. Grosshandler v. Commissioner,75 T.C. at 20-21. Accordingly, the addition to tax under section 6654(a) is sustained. We finally consider respondent's position that petitioner's underpayment of income tax for the taxable year 1980 is due to fraud. Sec. 6653(b)[17] provides an addition to tax of 50 percent of the amount of a tax deficiency if any part of the underpayment is due to fraud. To sustain a fraud determination under section 6653(b), respondent has the burden of proving by clear and convincing evidence (1) that there was an underpayment of tax, and (2) that some portion *116 of the underpayments was due to fraud. Sec. 7454(a); Rule 142(b); Hebrank v. Commissioner,81 T.C. 640, 642 (1983). Respondent has clearly and convincingly shown that petitioner underpaid his taxes for 1980. Accordingly, the first element of fraud is established. To establish the second element under section 6653(b), respondent must demonstrate by clear and convincing evidence that the taxpayer had a specific intent to evade a tax due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. [18]Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Stringer v. Commissioner,84 T.C. 693, 713 (1985), *117 affd. without published opinion 789 F.2d 917 (4th Cir. 1986). Fraud must never be presumed or decided on the basis of suspicion. Beaver v. Commissioner,55 T.C. 85, 92 (1970); Thurston v. Commissioner, 28 T.C. 350, 355 (1957). Nonetheless, fraud need not be established by direct evidence, but may be established from all relevant facts and circumstances. Kotmair v. Commissioner,86 T.C. 1253, 1260 (1986); Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). After an examination of the entire record in this case, we conclude that respondent has successfully carried his burden of proof. *118 In sustaining the fraud determination in this case, we list a few of those facts which most influenced our decision. We first note that petitioner had an educational background and demeanor in court which supports our assessment of him as being an individual who is both knowledgeable and articulate, although cunning and unctuous. As such, we find that petitioner cannot hide behind the mask of an individual unfamiliar with the tax laws and their ramifications. Cf. Halle v. Commissioner,175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946). We next point out that, from at least petitioner's 1976 taxable year, he has had a "consistent failure to report substantial amounts of income over a number of years." Harper v. Commissioner,54 T.C. 1121, 1139 (1970); Vise v. Commissioner,31 T.C. 220 (1958), affd. 278 F.2d 642 (6th Cir. 1960). Moreover, we find incredible the timing of petitioner's claim relating to his use of a fiscal year to report losses on commodity trades. Petitioner raised the claim on April 24, 1981, in a meeting he had with the attorneys of the Department of Justice. The meeting *119 was held in conjunction with criminal charges being filed against petitioner on three counts of failing to file individual tax returns -- counts for which he was subsequently convicted. The time at which petitioner raised this claim would suggest that it was a veiled attempt on his part to circumvent criminal action then proceeding against him. [19] Furthermore, petitioner acknowledged that he had generated gains from commodity sales between the months of March and December, 1980, in an amount in excess of $ 183,000. These acknowledged gains are, however, nowhere reflected on petitioner's tax returns for either 1980 or 1981. [20] A final element showing the fraudulent nature of the taxpayer's action is his submission of false W-4 forms claiming to be exempt from Federal income tax reporting. Petitioner certified under penalties of perjury that he incurred no tax liability in 1979 and anticipated no such liability in 1980. He filed such false forms in spite of the fact that he had secured jobs paying annual salaries equal to or in excess of $ 40,000 and had no indication that he would generate deductions of such magnitude as to reduce to zero any tax liability associated with these *120 annual salaries. Taken together, these facts indicate that petitioner purposely created a false 1980 return for the purposes of showing artificial losses to hopefully lessen his criminal liability in years 1977 through 1979 and to hide income earned for the year 1980. This dual motive of criminal defense and evasion does not lessen the fraud. "If the tax-evasion motive plays any part in such conduct the *121 offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." Spies v. United States,317 U.S. 492, 499 (1943). Having considered respondent's arguments and the evidence in this case, we hold that respondent has successfully carried his burden of proof by clear and convincing evidence. Accepting such, we sustain the addition to tax determined and asserted against petitioner under section 6653(b). To reflect the foregoing, Decision will entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The Court considers these increases in tax and in additions to tax under the authority of sec. 6214(a). ↩
3. Respondent conceded at trial the issue of whether petitioner received $ 2,295 in 1980 from Coopers & Lybrand as income not reported on petitioner's return. This $ 2,295 sum represented a portion of the income resulting in the $ 8,005 additional deficiency respondent placed in issue in his answer.↩
4. Petitioner submitted a $ 600 payment with this extension. Additionally, on this extension request petitioner did not indicate that his subsequently filed 1980 individual tax return would be for any taxable period other than for the calendar year 1980.↩
5. We note that a minimal mathematical error exists in the given losses and profits summary. ↩
6. To arrive at this calendar year gain of $ 35,586.10, we note that petitioner realized approximate gains totalling $ 183,000 on commodity trades completed between March 1, 1980, and December 31, 1980. ↩
7. Petitioner agrees that if the Court should find that he is required to use a calendar year period for 1980, the above statement of transactions is correct. Respondent agrees that should the Court find that the petitioner is entitled to a fiscal year basis, then the trades as reflected on petitioner's 1980 return are accurate.↩
8. The $ 5,375 in claimed deductions were itemized as follows: ↩
Advertising
$ 170.00
Car and truck expenses
430.00
Dues and publications
30.00
Insurance
40.00
Laundry and cleaning
60.00
Legal and professional services
170.00
Office supplies
110.00
Postage
80.00
Rent on business property
1,785.00
Telephone
260.00
Travel and entertainment
390.00
Utilities
330.00
Software
550.00
Theft of car
890.00
(while away on business trip)
Computer supplies
80.00
Total deductions
$ 5,375.00
9. As we previously observed in footnote 3, supra,↩ respondent has conceded this adjustment in petitioner's 1980 income.
10. Respondent in his answer set forth affirmative allegations which were deemed admitted by order of the Court dated February 15, 1985, and subsequently vacated by order of this Court, dated Aug. 27, 1986. In our vacating order, we gave petitioner an additional ten days in which to file a reply to respondent's answer. No reply was forthcoming. We point out that the resources of this Court would have been better utilized had respondent, after the ten-day period, filed another Rule 37(c) motion on petitioner's failure to reply in accordance with our vacating order. ↩
11. If a fiscal year is appropriate in this case, section 441(e)↩ would require that year to terminate on February 29, 1980, not February 28, 1980.
12. For the applicability of sec. 1.441-1(b)(3), Income Tax Regs., see sec. 1.441-1T(h), Temp. Income Tax Reg., 52 Fed. Reg. 48524, 48527↩.
13. Sec. 7701(a)(14)↩ provides, "The term 'taxpayer' means any person subject to any internal revenue tax."
14. See footnote 6, supra.↩
15. For the applicability of sec. 1.441-1(e)(2), Income Tax Regs., see sec. 1.441-1T(h), Temp. Income Tax Regs., 52 Fed. Reg. 48524, 48527↩.
16. Barbara Coal Co. v. Commissioner,T.C. Memo. 1987-466, n. 29, affd. without published opinion 853 F.2d 916 (3d Cir. 1988); Parker Tree Farms, Inc. v. Commissioner,T.C. Memo. 1983-357, n. 6, affd. without published opinion 813 F.2d 402↩ (4th Cir. 1986).
17. Sec. 6653(b) provided, in pertinent part, as follows: (b) Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *↩
18. Quoting from Merten's Law of Federal Income Taxation, we have said, "The Commissioner does not have to establish his determination of fraud beyond a reasonable doubt, but fraud must be established by more than a mere preponderance of the evidence; * * *." Kellett v. Commissioner,5 T.C. 608, 616↩ (1945).
19. Apparently petitioner was unaware at the time he raised such a defense that this was not a valid defense. Willingham v. United States,289 F.2d 283, 287 (5th Cir. 1961), cert. denied 368 U.S. 828↩ (1961). The crime was completed when, with willful intent, no return was filed. Any evidence of a loss in a subsequent year was irrelevant. 20. We have decided that petitioner's 1980 commodity gains should properly be reported on a calendar year basis. However, had petitioner been sincere in establishing a fiscal year to report his commodity gains and losses, this gain in excess of $ 183,000 should have been accounted for on petitioner's 1981 return.↩